## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

James Garner,et al
_____,

**Plaintiff(s),**

vs.

DOOR & WINDOW GUARD SYSTEMS,INC,
JIM GLASS,et al.
_____,

**Defendant(s).**

)
)
)
)
)
)
)
)
)
)
)
)
)
)

15CV10553
JUDGE DARRAH
MAG. JUDGE MARTIN

**RECEIVED**

NOV 2 0 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

---

### COMPLAINT FOR VIOLATION OF CONSTITUTIONAL RIGHTS ,
INJUNCTIVE RELIEF, JUSTICE, AND RICO VIOLATIONS

*This form complaint is designed to help you, as a* **pro se** *plaintiff, state your case in a clear manner. Please read the directions and the numbered paragraphs carefully. Some paragraphs may not apply to you. You may cross out paragraphs that do not apply to you. All references to "plaintiff" and "defendant" are stated in the singular but will apply to more than one plaintiff or defendant if that is the nature of the case.*

1.  This is a claim for violation of plaintiff's civil rights as protected by the Constitution and

    laws of the United States under 42 U.S.C. §§ 1983, 1985, and 1986.

2.  The court has jurisdiction under 28 U.S.C. §§ 1343 and 1367.

3.  Plaintiff's full name is  James Henry Garner _____.


*If there are additional plaintiffs, fill in the above information as to the first-named plaintiff and complete the information for each additional plaintiff on an extra sheet*(SEE #1 Attachment)

1



4.  Defendant, Chicago Police Sergeant or Lieutenant E-A Mr. Ferrer , is
                  (name, badge number if known)     (badge# 2409)

    ☒ an officer or official employed by  City of Chicago Police Department ;
                                          (department or agency of government)
       E-A Mr. Jim Glass via Door & Window Guard Systems,Inc.              or

    ☒ an individual not employed by a governmental entity.

*If there are additional defendants, fill in the above information as to the first-named
defendant and complete the information for each additional defendant on an extra sheet.*(SEE #2
Attachment)

5.  The municipality, township or county under whose authority defendant officer or official

    acted is  City of Chicago                              . As to plaintiff's federal

    constitutional claims, the municipality, township or county is a defendant only if

    custom or policy allegations are made at paragraph 7 below.

6.  On or about October 27, 2015, at approximately  7:42        ☒ a.m. ☐ p.m.
                 (month,day, year)
    plaintiff was present in the municipality (or unincorporated area) of    Chicago

    _____ , in the County of    Cook           ,

    State of Illinois, at    6522 S. Winchester Avenue, Chicago,Ill. 60636    ,
                         (identify location as precisely as possible)

    when defendant violated plaintiff's civil rights as follows *(Place X in each box that
    applies)*:

    ☒     arrested or seized plaintiff without probable cause to believe that plaintiff had
          committed, was committing or was about to commit a crime;
    ☒     searched plaintiff or his property without a warrant and without reasonable cause;
    ☐     used excessive force upon plaintiff;
    ☒     failed to intervene to protect plaintiff from violation of plaintiff's civil rights by
          one or more other defendants;
    ☐     failed to provide plaintiff with needed medical care;
    ☒     conspired together to violate one or more of plaintiff's civil rights;
    ☒     Other:
          Incident, just one of numerous actions and or inactions arising

          out of an ongoing enterprise and scheme by some Defendants,

          including City of Chicago, Cook County, and State of Illinois,
      to disrupt wreck pending federal cases, #12cv9994 and #14cv9880 ;

2

and to escape massive liability for kidnapping seven Plaintiffs.

7.  Defendant officer or official acted pursuant to a custom or policy of defendant

municipality, county or township, which custom or policy is the following: (*Leave blank*

*if no custom or policy is alleged*):City of Chicago, County of Cook, and State
of Illinois, all have a policy and practice of ignoring, covering-up,
and or failing to properly investigate or punish police misconduct,
police brutality, employee misconduct, concealment, suppression,
perjury, fraud upon Court, manufacture of false police reports,
criminal conspiracy, and other racketeering type conduct, including
fact that City of Chicago has a well settled, widespread "code of

silence" that exists within the Chicago Police Department.

8.  Plaintiff was charged with one or more crimes, specifically:

Plaintiff JH Garner was threatened with arrest by Defendant Ferrer

and subjected to unlawful restraint, during October 27, 2015-incident,

after Defendants City of Chicago, County of Cook, State of Illinois

via Department of Children and Family Services(DCFS), and or MB

Financial Bank, have conspired to have Plaintiff JH Garner charged
with battery, child neglect, child endangerment, unlawful use of weapon,etc

9.  (*Place an X in the box that applies. If none applies, you may describe the criminal
    proceedings under "Other"*)  The criminal proceedings

☐ are still pending.

☐ were terminated in favor of plaintiff in a manner indicating plaintiff was innocent.[1]

☐ Plaintiff was found guilty of one or more charges because defendant deprived me of a

fair trial as follows _____

_____.

☒ Other: were terminated in favor of Plaintiff JH Garner, except for
1991 child endangerment because Defendants City of Chicago,
County of Cook, and DCFS, conspired to deprive me of a fair trial.

[1]Examples of termination in favor of the plaintiff in a manner indicating plaintiff was innocent
may include a judgment of not guilty, reversal of a conviction on direct appeal, expungement of the
conviction, a voluntary dismissal (SOL) by the prosecutor, or a *nolle prosequi* order.

10. Plaintiff further alleges as follows: (*Describe what happened that you believe supports your claims. To the extent possible, be specific as to your own actions and the actions of each defendant.*)

INTRODUCTION WITH SPECIFIC ACTIONS

This is a civil action seeking more than $100,000,000 in damages for repeatedly, over an unconscionable two decade plus period, depriving some Plaintiffs, while acting under color of law Chicago Officials(including Police), Cook County Officials, and Illinois Officials, of rights secured by the Constitution and laws of the United States of America(USA), and for related State law claims, in regard to justice for seven kidnapped Plaintiff Garner's babies, who upon information and belief, have been raped, tortured, abused, and enslaved, while such kidnap victim's Plaintiff parents have subjected to numerous illegal raids, unlawful seizure/theft of property, deliberate destruction of evidence, incidents of property damage, and almost countless other disruptive tactics and conspiracies, all part of a scheme and enterprise, designed to cover-up, obstruct

(SEE "ATTACHED PLAINTIFF FURTHER ALLEGES:")

11. Defendant acted knowingly, intentionally, willfully and maliciously.

12. As a result of defendant's conduct, plaintiff was injured as follows:

Plaintiff JH Garner's life was permanently destroyed on November 14, 1994, when Garner's first four much loved revered babies were taken by force to a Chicago police station, tortured for hours before parents charged with fraudulent child neglect charges...all later dropped, and such four babies kidnapped from station, all under 4-years; leaving Garner to suffer decades of severe inhumane emotional distress, and catastrophic financial losses/damages in millions, including the more than $500,000 owed to Defendant Cocomise. Plaintiff Turner and or all ten Plaintiff children have suffered severe emotional distress,

13. Plaintiff asks that the case be tried by a jury. ☒ Yes ☐ No mental injury, physical injury, and much more.

4

14.     Plaintiff also claims violation of rights that may be protected by the laws of Illinois, such

as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy,

and/or any other claim that may be supported by the allegations of this complaint.


**WHEREFORE,** plaintiff asks for the following relief:

A.      Damages to compensate for all bodily harm, emotional harm, pain and suffering,

loss of income, loss of enjoyment of life, property damage and any other injuries

inflicted by defendant;

B.      ☒ *(Place X in box if you are seeking punitive damages.)* Punitive damages

against the individual defendant; and `triple damages, per Rico violations;`

C.      Such injunctive, declaratory, or other relief as may be appropriate, including

attorney's fees and reasonable expenses as authorized by 42 U.S.C. § 1988.

Plaintiff's signature: _James Garner; Jam Parson PRESI; Jam Garner ANOOCP; Jam Garner EXECUTOR of HAG; Tina Turner_

Plaintiff's name *(print clearly or type)*: _James Garner; ANOOCP; Estate of HMG; Tina Turner_

Plaintiff's mailing address: _P.O. Box 368371;  P.O. Box 368849_

City_Chicago_          State _Illinois_ ZIP    _60636_

Plaintiff's telephone number: ( _312_  _860-4196_               .

Plaintiff's email address *(if you prefer to be contacted by email)*:_____


_____

15.     Plaintiff has previously filed a case in this district.  ☒ Yes  ☐ No

*If yes, please list the cases below.*

05cv0673 ;     12cv09994 ;     14cv09880

*Any additional plaintiffs must sign the complaint and provide the same information as the first plaintiff.  An additional signature page may be added.*

#1 Attachment:
"LIST OF PLAINTIFFS"

=N THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAMES HENRY GARNER, minor children)
JAMES AMISTAD MOSES GARNER,  )
JAMES ED SOCRATES GARNER,     )
KIM VIOLET GARNER,            )
JAMES JULIUS GARNER,          )
HILLARY LATOY GARNER;         )
JAMES LEE GARNER,             )
APRIL TINA GARNER,            )
HENRY MALCOLM GARNER,         )
JAMES RICHARD GARNER,         )
TINA ABIGAIL GARNER;          )
TINA TURNER, and JAMES H. GARNER )
on behalf of THE ESTATE OF HENRY  )
GARNER, AFRICAN NATION ONE    )
 AND ONLY CHURCH OF PROSPERITY )
 (ANOOCP),                    )
Plaintiffs;                   \

#2 Attachment:
"LIST OF DEFENDANTS"

=N THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Mercy Hospital and Medical Center )
UNKNOWN DOCTOR, UNKNOWN WORKER;    )
Rush University Medical Center     )
UNKNOWN DOCTOR, UNKNOWN WORKER;    )
John H. Stroger, Jr. Hospital of   )
Cook County UNKNOWN WORKER:        )
Illinois Department of Children    )
and Family Services(DCFS) STUART   )
A. MOORE, KENNEDY JAMES, LORNE     )
GARRETT, UNKNOWN SUPERVISOR,       )
UNKNOWN WORKER, UNKNOWN DIRECTOR;  )
MICHAEL FOX; Domain Realty         )
UNKNOWN AGENT:                     )
                                  R )
                                   )
Chicago Police Officers:           )
GOMEZ-#7009, ROMANOWSKI-#6217,     )
Sgt ARTZ, DOWLING-#12445,          )
DOWLING;                           )
                                   )
                                   )
                                   )
CITY OF CHICAGO, JASON ROBERTS;)
COUNTY OF COOK; Rosestone          )
Investments,LLC, ALLAN KIRCHNER;   )
STATE OF ILLINOIS; IRA NEVEL;      )
GILBERT BALIN;  PC Development Inc, )
PHILLIP COCOMISE;                  )
MB FINANCIAL BANK;  OTIS DAVIS;    )
Chicago Police Officers: PHIL CLINE, )
ROBERTA BARTIK, JAMES DOWLING, )
DONNA STRAND-#2657, cop ORTIZ,     )
cop-#18692, Unknown cop-#1,        )
Unknown cop-#2, Unknown cop-#3,    )
Unknown cop-#4, Unknown cop-#5,    )
Unknown cop-#6, Unknown cop-#7;    )
Cook County State's Attorney ANITA )
ALVAREZ, ABIGAIL  ABRAHAM;         )
Cook County Sheriff THOMAS DART,   )
Sheriff Deputy-Star-#11080, GEORGE )
VOURNAZOS, unknown Sheriff attorney, )
DANIEL CRAMER-Star-#5060, CARMEN)
GERCONE-Star-#221, unknown         )
deputy-#1, unknown deputy-#2, and  )
former Sheriff Deputy-LARUE BEY;   )

PAGE 1 of 2

#2 Attachment:
"LIST OF DEFENDANTS"(continued)

Chief Judge of Cook County Circuit Court )
TIMOTHY EVANS, LAURA KELLY;     )
Cook County Hospital Doctor MICHELLE )
LORAND;  COOK COUNTY PUBLIC    )
GUARDIAN, Assistant Public Guardians )
and LESLIE ROBBINS;  Cook County   )
Juvenile Court Coordinator MARY LUND )
Illinois Department of Human Rights   )
ROCCO CLAPS, PAUL GALBRAITH;    )
Attorney Registration and Disciplinary  )
Commission JEROME LARKIN, RITA    )
GREGGIO, GINA ABBATEMARCO,     )
JOHN CESARIO, ALTHEA KULLER;    )
Illinois Attorney General EWA LIPSKI;   )
UNKNOWN WORKER; GLENN CHERTKOW; )
Thomas More Society UNKNOWN      )
ATTORNEY-#1, UNKNOWN ATTORNEY-#2 )
                                                           )
MB Financial Bank's MITCH FEIGER,   )
ANGEL BELTRAN, MARLO GAAL,      )
ROBERT MALINOWSKI,           )
TROY ACOSTA;                )
Digby's Detective & Security Agency,Inc, )
Unknown Guard-#1, Unknown Guard-#2; )
Swap O Rama WALTER EDWARDS;    )
CAROLYN SMITH, CHARLES        )
SILVERMAN, TORRICK WARD,       )
TIMOTHY ROWELLS;           )
Cigna Insurance's unknown worker;)
Hartford Insurance's unknown
worker; Luis Vera, Erika Petersen,
Ricardo Cazares, Meryl Daskal;
Robert Brunn; Rosemary/assistant
to Evans; Maggie Spearman;
Reverand Revis; Illinois Commerce
Commission(ICC)'s unknown workers-
#1, #2, #3;  Brothers Submarine
unknown worker;  Brothers Food
unknown worker;  Chicago Transit
Authority(CTA) unknown worker;
 UNKNOWN LAWYER;

Richard Devine;
Defendants.

PAGE 2 of 2

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"

justice, use numerous expensive fraudulent cases/litigation to try to

usurp Plaintiff JH Garner's quarter-century home base/subject property(5114

S. Damen, Chicago, Illinois 60609) that kept Garner in a chaotic position

of a pauper(SEE Exhibit #457 for example of how Defendant officials have

built a reputation for using litigation to block justice and financially

ruin non-rich or poor litigants), unable to have any fair opportunity to

pursue redress for the initial four kidnapped Plaintiffs on November 14,

1994(including JL Garner, AT Garner, as perfectly healthy toddlers, &

HM Garner, JR Garner, as very healthy well fed twin sons about/8-month old

babies/SEE Exhibit #"B"), along with Garner's well fed possibly disabled

three mostly teenage alleged half-siblings(SEE Exhibit #"B"/entrusted to

Garner per last wishes of Garner's much revered late father Henry M Garner

who died in 1994, just months before initial November 1994 kidnappings)

that such officials separated coerced into pressured "pawns" used to

successfully "frame" Garner on a bogus misdemeanor manufactured in October

1994 that created Garner's only loss of a criminal case in 1996, and it was

after Garner excercised his First Amendment right to launch an international

letter writing campaign plus the release of the April 1, 1995 eight-page

Americans For Fairness(AFF) flyer/publication to address plus protest both

the aforementioned kidnapping followed by innocent parent Plaintiffs being

subjected to an un-Constitutional juvenile court system featuring jury-less

Kangaroo courtrooms that force poor parents to face four or five government

agencies with separate lawyers while parents simultaneously facing criminal

prosecution in a double-jeopardy type situation(SEE Exhibit #131),

that the ongoing enterprise and scheme initiated by Defendant officials,

began.

NATURE OF ONGOING ENTERPRISE AND SCHEME

(1.)

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

The enterprise against Plaintiffs was a concerted effort by Defendant
officials to drive Plaintiffs from subject property, use multiple fraud
upon Courts, rig litigation to harm Plaintiffs financially, obstruct justice,
and violate their constitutional rights perpetuated by, among other things:

     i)    1995 retaliatory, intimidation attempt, brazen courthouse
hallway kidnapping of basically newborn Plaintiff TA Garner, executed
personally by Cook County State's Attorney ASA Defendant Abigail Abraham
and a few unknown Cook County Sheriff deputies, from the arms of Plaintiff
Turner, when Plaintiff parents appeared at a hearing in the old 26th and
Michigan courthouse.

     ii)    1995 or-1996, around this time, Defendant Abraham, upon information
and belief, did contact two retail renters, that were paying about $1,000
each per month to Plaintiff Garner as Executor of Plaintiff Estate of
Henry M Garner to rent two storefronts at 1156 W. 63rd Street(Chicago, Ill
60621) and 1158 W. 63rd, respectively. Suddenly, such long term tenants
became hostile to Garner, with held vital rent payments, combined to file
bogus litigation against Garner in Daley Center, Garner lost rigged case,
and Abraham has successfully terminated vital Estate revenue. Thus, Abraham
had simultaneously destroyed the Estate's ability to function.....causing
the Estate to lose more than three other buildings, embroiled Garner in
another expensive time consuming civil case, and created a major disruption
to Garner's ability to fight two pending criminal cases(child neglect &
child endangerment) and two pending juvenile court cases(Garner's four or
five kidnapped toddlers plus babies & Garner's three half-siblings).
Therefore, in furtherance of enterprise to ruin Garner, Abraham had Garner
financially and mentally overwhelmed under the impossible unfair burden on
a pauper, of being forced to almost simultaneously fight five fraudulent

2.

#3 Attachment:
   "PLAINTIFF FURTHER ALLEGES"(continued)

rigged cases pending in three different courthouses, as Garner/an American
father refused to take any parenting courses that he could teach, and thus,
refused to help Defendant officials cover-up their crimes against Garner's
family.  Other American fathers(SEE Exhibit #"A") have been subjected to
the ultimate excruciating agony of having their babies kidnapped by ruthless
blackhearted monsters masquerading as caring public servants/officials;
Indeed, a human being with even a hint of a conscience or moral compass,
could never sleep at night, knowing they were in a position to help innocent
healthy happy babies being kidnapped from their father with a false report
followed by fraud upon a Court inducing some over-worked Judge to sign
a Court order, "putting lipstick on a pig"........making a kidnapping seem
legal.

        iii)   1995, also around this time, Defendant Attorney Registration
and Disciplinary Commission(ARDC) via Defendant Althea J Kuller, denied
Plaintiffs equal protection under the law, because they failed to properly
investigate Plaintiffs complaints, ignored such complaints, and or
covered-up such complaints, in furtherance of enterprise.

        iv)   1995 or 1996, on the day of a juvenile Court trial, Defendant
Chicago via unknown cops towed Plaintiff vehicles from street in front of
subject property, and made Plaintiff Garner late to trial, because Garner had
to "ready" a seldom used vehicle stored in garage.

        v)   June 11, 2014, Defendant Rosestone Investment LLC's boss
Defendant Allen Kirchner called(VISIT YOUTUBE channel TriSunTV7 & SEE
Exhibit #701) Plaintiff Garner with several "gang-ster"/organized crime
style threats(SEE Exhibit #304), after Garner's Illinois Supreme Court
appeal attorney Mr. Stephen Saporta filed a June 9, 2014 motion seeking
to overturn or nullify fraudulent rigged five-year+ Daley Center foreclosure
case(#08CH34917) filed without any standing and unlawfully maintained in

3

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

Daley Center years to wear down and further financially ruin Garner, in

furtherance of enterprise, while Defendant Timothy Evans ignored Garner's

complaints about misconduct plus fraud in foreclosure case, as well as

bogus criminal cases lodged by Defendant MB Financial Bank(MB) at direction

of MB branch manager Defendant Troy Acosta, MB Defendant Robert Malinowski,

MB Defendant Marlo Gaal, and MB boss Mitch Feiger. Defendant City of Chicago

and MB operative Kirchner subjects Garner to illegal eviction threats, demands

that Garner stop Attorney Saporta from trying to nullify fixed foreclosure

case, indicate he had Daley Center clout, suggest an arson insurance scheme

to get his money out of subject property, and finally, threaten further

interference with Garner's pending federal lawsuit(#12cv9994).

        vi)    June 17, 2014, Plaintiff Garner filed a housing

discrimination complaint against Defendants Rosestone, Kirchner, Kirchner's

attorney Mr. Ira Nevel, PC Development,Inc, and MB/City operative/Kirchner

associate Phillip Cocomise. United States Department of Housing and

Urban Development(HUD) sent such HUD complaint to Defendant Illinois Department

of Human Rights(IDHR) for investigation(IDHR #2015CHO732 / HUD 05-14-1549-8),

resulting in complaint Respondents(Nevel & Cocomise) lying to obstruct rigged

investigation by Defendant IDHR Investigator III Paul Galbraith, who along

with Defendant IDHR boss Rocco Claps that conspired to sabotage previous

2005 IDHR case against City and MB, filed by Garner. Thus, Galbraith conducted

an unfair one-sided investigation, failed to seek or review Garner's

evidence, and refused Garner's request for a temporary restraining order

to protect Garner's evidence and Garner's family still residing in subject

property. Despite IDHR being aware that Cocomise had previously lied

to IDHR to close 2009 case(#2009CH1017 / HUD#05-08-1928),IDHR ruled in favor

of all Respondents and closed 2014 case.

        vii)   September 2, 2014, Plaintiff Garner sent letter to Defendant

Cook County Sheriff Tom Dart about his subordinates perjury in conspiracy

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

to create yet another fraudulent Daley Center Courthouse
case(number 13M1724672), that there had been several prior fraudulent
Daley Center cases(#97COTDS0821 Judge Bush May 5, 1999 Order attached to
Exhibit #545,etc) filed against subject property, that Defendant Evans
was aware of such fraud, and soon Dart's office via Sheriff attorney
Defendant George Vournazos invited Garner to send the Sheriff additional
evidence via the Vournazos email address rendered to Garner. Thus,
Garner sent additional evidence to Dart's office and a 14-page letter(Exhibit
#546) to Cook County Judge George F. Scully about such fraud plus
perjury, pursuant to advice via letter from Evans office.

     viii)  September 22, 2014, during a hearing pursuant to Defendants
Rosestone/Kirchner's attorney Nevel's motion to hold Dart in contempt for
failure to quickly execute eviction of Plaintiff Garner's family from
subject property, the "fixed" case was exposed before Judge Scully(VISIT
YOUTUBE channel "TruthLeaks" & SEE "Ira Nevel" parts 1-3), when a frequently
screaming Nevel repeatedly disrespected Judge Scully, after Vournazos told
the Court that Sheriff Dart's office would not execute Scully's eviction
order while Sheriff's investigation was pending and such order would never
be executed, if the investigation confirmed Garner's allegations to the
Sheriff that Nevel obtained such order via fraud. It was outrageous
complete misconduct to see a Cook County Judge seemingly begging Nevel to
understand that he wasn't leaving Nevel hanging. Despite numerous attorney
witnesses(including Vournazos, another unknown Sheriff attorney, Plaintiff
ANOOCP church attorney Defendant Timothy Rowells,etc), Defendant ARDC via
Defendants Jerome Larkin, Rita Greggio, Gina Abbatemarco, and John Cesario,
all conspired to cover-up Nevel's misconduct and wrongfully closed Garner's
ARDC complaints against Nevel, Defendants Carolyn Smith, Charles Silverman,

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

Torrick Ward, and or Rowells, all crooked real estate lawyers who conspired
against Plaintiffs.

ix)    November 10, 2014, Plaintiff Garner's family was inside
subject property, when Garner heard a loud banging against the building,
like someone was trying to break in.  Garner looked out of a north side
second floor rear window into adjacent alley and saw Defendant Kirchner
standing on Damen Avenue with someone with a big video camera, along with
numerous Cook County Sheriff vehicles, as several Sheriff deputies were
wielding a huge battering ram, being used break down the front north door
that leads into the Plaintiff ANOOCP church.  Within minutes, unknown
deputies could be heard destroying internal building doors and soon, at
least three unknown Sheriff deputies, some with guns drawn aimed in
direction of Garner's disabled family, appeared in the second floor rear
kitchen area where the family was gathered.  At that point, Garner noticed
a man with a big video camera, who appeared to be shooting video of subject
property and Garner's three disabled children, as European American female
Sheriff deputy-#1 says, statements like, "your time to make decisions is past",
"you cannot take any personal property with you", "you have to see Mr.
Kirchner as you go outside, to get your personal property,etc.  Deputy-#1
asked Garner for the combination to any safe, so they could count any money
that was therein the safe and she asked Garner to sign a Sheriff form.
Garner refused and was ordered to exit building from the front south Damen
Avenue door.  Thus, instead of allowing Garner's family to exit from the rear
west side door into the family van parked in the rear drive way, illegal
raiding party(Kirchner's team, Cook County Sheriff's team,etc) forced family
to be subjected to a "prep walk" past onlookers and MB's bank workers.
Outside, when Garner asked Kirchner for the property that was still inside

(6)

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

subject property, Kirchner says something like, "why, so you can make some more motions to cost me some more money", as he walked into subject property, as the illegal raiding party could be seen running in and out of the front and back exit doors of subject property, looting the building. Garner called Chicago police about property being stolen and the police did not do anything, like arrest anyone or even make a police report, according to Garner's available notes, at this time. Garner called the Cook County Sheriff worker in charge of the investigation of Deputy(#11080)'s perjury that was used to create eviction case and such worker says he has not completed his investigation, someone in the Sheriff's office has a vendetta against Garner, and gave Garner the name plus phone number of the person in charge of the execution of evictions. Garner called that person, who advised Garner to call Chicago police about subject property looting. Standing outside to watch the illegal raid, was Defendant Cocomise, who asked Garner whether Kirchner had took all of Garner's evidence(for pending federal case #12cv9994), asked Garner whether he wanted to move his family into Cocomise's vacant Ellis property, and offered Garner $100 to buy Garner's disabled family coats at Salvation Army thrift store, since the Sheriff had took the family coats, forcing Garner to leave in a small Christmas blanket.

x)    October 27, 2015, around 7:40 am, Defendant City operative Defendant Door & Window Guard Systems,Inc(DAWGS) via boss Defendant Jim Glass led a group of men, who broke down both part of the exterior fence and front drive-way gate, to trespass on Plaintiff ANOOCP church property at 6522 S. Winchester Avenue, Chicago, Illinois 60636. Plaintiff Garner, who was at the church, noticed the break-in and trespass, and called Chicago

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

Police. Soon Chicago police officer Dowling(E-A-M) star number 12445 and a second officer Dowling(E-A-M), arrived and Glass gave the officers a Court Order(Exhibit #955) that Glass said, gave Glass the authority to break into the church. Garner told the officers the Order did not give Glass any authority to break into anywhere. The officers called a superior and Sergeant or Lieutenant Defendant Ferrer star number 2409 arrived. Ferrer read the Order and threatened to arrest Garner, unless Garner unlocked the church doors. When Garner refused, Ferrer told Glass that Glass could break into the church, and Garner stayed in van with his disabled family, who were subjected to trauma of a second illegal raid, in less than a year. Glass broke into church, as officers followed, there was a great deal of property damaged, the church building was damaged, there was looting, the church office was a wreck, and there was outrageous deliberate vandalism, where someone in the illegal raiding party, urinated in a church cooking pot. Ferrer was asked by Garner to have Glass move the big rental truck in the church driveway, blocking Garner from driving the van off of church property, because Garner had to use the washroom, and Ferrer refused, subjecting Garner's family to unlawful restraint. Next, at Glass urging, Ferrer ordered Garner to open driver's side rear sliding door of van, to expose Garner's disabled family to Glass taking video and or pictures with his cell phone and Plaintiff Turner told Ferrer it was illegal for Glass to be taking pictures of her kids. Turner remembers Ferrer saying its fine, it is not illegal. Ferrer finally, allowed the family to close the van door, saying the kids looked okay, but he failed to order Glass to remove the truck blocking the van from leaving. Garner called Chicago police again asking for Ferrer's superior to come to the church and the police refused. Garner asked all three Defendant officers

(8.)

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

to arrest Glass for previous property damage at the church, for which Garner
had a police report number, and for the crimes(trespass, property damage,etc)
Glass was currently commiting, and all three officers refused. Thus, Garner
made a complaint with the Independent Police Review Authority(IPRA).

OPERATIVES OF ONGOING ENTERPRISE AND SCHEME

Defendant officials are the main driving force behind the ongoing
enterprise, such officials directly attack Plaintiffs via various corrupt
public officials(like Defendants Artz, Roberts, three Dowlings, Alvarez,
Abraham, Vournazos,etc) and at almost every opportunity, such officials
often simultaneously indirectly attack Plaintiffs via various mostly real
estate related operatives(like Defendants Kirchner, Nevel, Balin, Cocomise,
MB, Smith, Silverman, Ward, Rosestone, DAWGS, Glass, and Rowells).

Such operatives use fraud, perjury, theft, criminal conspiracy, false
reports, forged deeds, and other crimes to disrupt, harass, and steal
from Plaintiffs, while receiving cover/protection and help from Defendant
officials.

For example, on September 10, 2015, in a federal Court hearing(#12cv9994),
Honorable Manish S. Shah advised Plaintiff Garner that the November 2, 2015
deadline for Plaintiffs' responses to Defendants(City & MB) motions for
summary judgment, would not be extended.

On or around October 1, 2015, Defendant City workers sent a lawn mower
that mowed about a 8-foot wide path toward the back of the vacant lot(6518
S. Winchester) adjacent to church property front stairs, as to create a path,
strangely leaving about 80% of the weeds on this private lot intact.

On Friday October 2, 2015, Glass drove onto such vacant lot, blew his
car horn to create a commotion, when Garner came out on the front porch
church stairs to see what was going on, Glass told Garner he was here to

9.

#3 Attachment:
   "PLAINTIFF FURTHER ALLEGES"(continued)

take property, Garner called Chicago police because of previous police
report against Glass for property damage at church, Glass could be seen
making a phone call, a process server(?) walked through the path recently
made by City to walk to the church fence to hand Garner notice(alias
summons) that he was to appear the next business day October 5, 2015 as
a Defendant in yet another fraudulent Daley Center courthouse civil
case number 15M1500489, and Glass drove away, after luring Garner to
come outside church to be served via the path created by the City.

   October 5, 2015, fearing Glass would send a DAWGS team to break in
to wreck church while Garner was in Daley Center, church made a last minute
hiring of a security guard service(Intellex Security Corp, 5760 S. Archer
Ave, Chicago, Ill. 60638, 773-735-6666/SEE Exhibit #956), which caused Garner
to be late to the 2pm hearing, when the guard arrived at 1:50pm, and although
Garner called the courthouse to try to explain his "good cause" for running
late, the hearing was executed ex parte......without Garner. Upon arrival
to room 1402/Judge Daniel J. Kubasiak, his clerk(A-A-F) refused to give Garner
a copy of the court Order, she advised Garner to call DAWGS to make the case
go away and Garner was given the "run-around" by various clerks, before
Garner finally got a copy of one version of the Court's order, after a
visit to Cook County Circuit Court Clerk Dorothy Brown's 10th floor office.

   October 6, 2015, Garner filed a motion to vacate, which was scheduled
to be heard on October 13, 2015.

   October 8, 2015, Glass brought a team of goons to the church at around
7:36am, and ordered these men to break into church, forcing Garner to call
Chicago Police. Defendant officers Gomez(#7009 / H-A-M), Romanowski(#6217 /
E-A-M), and followed by ranking officer Artz(E-A-M), arrived at church.
Glass produced a different version of Kubasiak's October 5, 2015 Order and
gave that to the officers. When Garner rendered another version of the same

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

Order containing additional struck content, both Glass and Artz falsely
accused Garner of altering Judge Kubasiak's Order.  While all officers
refused to allow Glass to break into the church that day, Artz told
Garner that Artz would appear at the church on Sunday October 11, 2015
with DAWGS/Glass and a bolt-cutter would be used to cut church locks
allowing Glass to break-in church, despite Artz being aware that a
hearing had been scheduled for October 13, 2015 before Judge Kubasiak.
All three officers refused to arrest Glass for damaging church property
during an illegal June 12, 2015 DAWGS raid, when Chicago police were called
and arrived to see Glass wielding a crow bar, yet these currently unknown
officers refused to make a police report or arrest Glass, who said he had
filed a  lien and he would hold a "fire sale" for church property and personal
property being wrongfully held at subject property controlled by Kirchner
and Glass, before Glass left;  Garner lodged an IPRA complaint(#1075635) against
unknown officers failing to arrest Glass and the next day, June 13, 2015,
Garner filed a police report(RD# HY297982).

In fear that Artz would be at the church on Oct. 11, 2015 with DAWGS,
Garner filed an emergency motion on October 8, 2015, but Daley Center clerks
blocked a next day(Friday October 9, 2015) hearing proposed by motion and so,
Garner wrote a letter to Defendant Evans to once again make him aware of yet
another instance of Daley Center wrongdoing(Exhibit #954).

October 8, 2015, in retaliation for Garner stopping DAWGS illegal raid
and in violation of Garner's First Amendment rights, Glass sent Garner an
email(Exhibit #953) stating that Glass had made a false report(#13095228) to
Defendant DCFS and now, this false 2015 report by Glass, like the false 1991
report by Defendant Cook County via Defendant Cook County Hospital(currently

(11.)

#3 Attachment:
   "PLAINTIFF FURTHER ALLEGES"(continued)

called "Stroger"?) via Defendant Michelle Lorand, clearly puts three

disabled minor Plaintiffs KV Garner, JE Garner, and JA Garner, in grave

danger of being kidnapped by the very corrupt Defendant State of Illinois

via Defendant DCFS(Exhibit #37), if such three Plaintiffs are with their

father Garner, who is President of the church(Exhibit #952).

October 13, 2015, Judge Kubasiak ruled against Garner as Glass had

promised at the October 8, 2015 incident at the church. Thus, the

Court denied Garner's motion(s) and rendered an Order giving Garner

seven days to render property to DAWGS.

October 16, 2015, Garner filed an appeal with the Illinois Appellate

Court of Illinois, appealing Judge Kubasiak's Orders(including the October

13, 2015-Order).

October 27, 2015, as already described herein above, DAWGS and City

executed in conspiracy an unlawful raid at church, while case under appeal.

October 28, 2015, on or around this date on DCFS notice(Exhibit #959)

wrongfully left stuck on front gate fence directly adjacent to public

sidewalk in front of church, not in an envelope, for any person passing by

to read or take, by DCFS via Defendant Stuart A. Moore and thus, Garner

would have no proper notice by DCFS that it was taking action based upon

the false report by a criminal like Glass.

November 2, 2015, was Honorable Federal Judge Manish S. Shah's deadline

for both Plaintiff Garner and Plaintiff Turner, disabled since 16-years old

when a gangbanger pumped several 44-caliber bullets into her head and

body, still living with inoperable lead fragments in her head today. Due

to being inhumanely overwhelmed by timely October 2015 chaos Garner was

subjected to as partially described herein above which included a threat

for a sixth kidnapping of Garner's last three disabled kids, Garner had not

(12)

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

just "good cause" but "great cause" to fail to comply such deadline(12cv
9994) because Garner's usual burden of home-schooling/caring for three
disabled children plus a disabled wife was deliberately over-loaded
by the calculating Defendant officials ongoing enterprise and scheme.
Thus, on many occasions over decades since the initial 1994 kidnaping
described herein(Exhibit #131) and similar to other legal kidnappings(like
Exhibit #"A") by corrupt conspiring officials, such Defendant officials
have ruined many of Garner's financial opportunities, kept Garner very
disrupted fighting numerous illegal raids, kept Garner tied-up on fraud
rife rigged cases(Exhibit #457), repeatedly threatened to kidnap more
Garner kids(Exhibits #10 & #11), repeatedly used corrupt City owned Judges
like Laura Liu(Exhibit #34) to steal Garner's subject property, wrecked
many investigations(Exhibit #25) initiated by Garner seeking relief, and
seemingly always in a struggle, being kept in a position of needing more
time. Therefore, Garner filed a November 3, 2015 motion asking Judge Shah
for an extension of his deadline and an injunction/protection.

November 9, 2015, Judge Shah denied Garner's motion and Garner has been
systematically put into a bad position in the case(#12cv9994). In fairness
to Judge Shah, he has not been aware that the events of December 2010 represent
a mere fraction of what this case is all about and settled federal case
number 08cv3527(Curtis vs Mount Prospect) mixed with Exhibit #"A" would
mirror this case.

Moreover, Judge Shah would have no way of knowing that Garner would
have never let former Attorney Defendant Jason Craddock file the case(#12cv
9994) in 2012, if it were not for Craddock's pledge to amend the initial
complaint to include Garner's kidnapped children and Craddock would have never
represented Garner, had Craddock revealed he was secretly working with

(13)

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

Defendant MB's lawfirm for about a year, while Craddock deliberately
allowed the case to be "watered down"/lose conspiracy counts by ignoring
Honorable Federal Judge St. Eve's demands to bolster complaint's "bare-
bone" conspiracy allegations, before Craddock finally revealed in 2013
that he was connected to MB.

Without time and a protected work office, Garner cannot present the
proof to any Honorable Judge, that Garner, had subject property stolen
by perjury in a fraudulent Daley Center 1998 case(Exhibit #"F") and was
raided by Defendant Kirchner in 1999(Exhibit #"D"), after Defendant Balin's
perjury during an ex parte hearing before Honorable Judge Bush. This
example case(97COTDS0821) proves that Garner can, with time, his evidence,
and a competent attorney, convince any honest Judge to render a just
ruling, even if that means a complete reversal from a previous
position(SEE Judge Bush's May 5, 1999-order included with Exhibit #545 or
#546).

<u>INJUNCTIVE RELIEF IS VITAL TO PLAINTIFF</u>

In that vein, it is vital that Plaintiff receive services of a competent
honest civil rights lawfirm and injunctive federal court orders, described
as follows, to allow Plaintiffs their first opportunity to file a legally
sound complaint that fully describes the crimes committed against Garner's
family over decades and then have the chance to  prosecute Defendants
without the endless interference and very expensive disruptive tactics,
many illegal, employed by Defendants to forever escape massive liability
willfully ruining a dozen lives(Exhibit #"B"):

      a)    Injunction Against Maintaining or Starting New Litigation-



14.

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

Some type of Order barring Defendants from using any type of fraudulent
litigation against Plaintiffs, until this case is resolved.

     b)    Injunction Against Any DCFS Action Regarding Plaintiffs-
DCFS could not maintain or start any new investigation or take any action
against Plaintiff Garner's three youngest kids, until this case is resolved.
IN FURTHERANCE OF ONGOING ENTERPRISE AND SCHEME

Defendant officials, from time to time, seemingly at every opportunity,
have systematically conspired with numerous other officials, along with
various private entities and operatives, to subject Plaintiffs to the
manufacture of numerous false reports(police, DCFS,etc), numerous incidents
of perjury(Exhibits #3, #514, #515, #596, and #5) to start fraudulent
litigation or close investigations, case rigging, mail fraud, and many other
crimes:

Defendant Cocomise bank fraud(Exhibits #468 & #470) compared to his
lies to government(Exhibit #481 & #596) to shut down investigations.

Defendant Nevel mail fraud(Exhibit #"E") letter to FBI, to obstruct
justice and prevent Garner from access to vital evidence therein subject
property, to wreck Garner's federal lawsuits.

Thus, Plaintiff also requests third injunction, as follows:

     c)    Defendants Cannot Destroy or Sale Subject Property-
Defendants must properly secure subject property and prevent any additional
loss of Plaintiff property, until this case is resolved.  A Court appointed
receiver should control access to subject property, and allow Garner access
by appointment, until Garner is in a financial position to remove all
remaining property from subject property.

(15.)

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

PLAINTIFFS HOUNDED AND HARRIED FOR MORE THAN TWO DECADES

Far beyond the mere Rico and hundreds of civil rights violations, Plaintiffs(mainly parents) systematically hounded and harried for more than two decades, since Plaintiff Garner launched the "Free Tina Turner's Babies" Campaign / "FRAMED BY DCFS!" with the international distribution which followed the April 1, 1995 release of such flyer/publication exposing the "framing", kidnapping, Kangaroo courts, case "rigging", other crimes committed by City of Chicago, Cook County, and State of Illinois corrupt officials, along with naming names(Exhibit #131).

Instead of suing Plaintiff parents for libel.....which wasn't a viable option because such publication facts were rife with truth, such Defendant officials conspired to subject Plaintiff parents to inhumane emotional pain of enduring four more additional kidnappings(1995, 1997, 1998, and 2004) and at that point in 1995, such Defendant officials did begin their ongoing enterprise and scheme.

A scheme so extraordinary in breadth and scope, that affluent cunning real estate mogul Defendant Cocomise once opined that Garner's story should be made into a movie and Cocomise may only be aware of half the ordeal, since Cocomise mysteriously came out of nowhere to meet Garner in 2004 to begin rendering dozens of high interest "juice" loans to Garner during the past 11-years.

Despite the "scheme" manipulating Garner into a fraudulent August 2007 $170K Resmae mortgage loan involving Cocomise that rendered the Lion's share $100K check to Cocomise that led to Garner being tied-up in five-year+(Exhibit #457) Daley Center fraudulent foreclosure case(#08CH34917) fought up to Illinois Supreme Court(Google "Rosestone vs Garner) resulting in Defendant Kirchner's illegal November 10, 2014 raid at subject property making Garner's disabled

(16.)

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

family try to stay abreast of two federal cases in a homeless position currently exacerbated by Defendant Glass' October 8, 2015 false DCFS report, Cocomise has manipulated himself into a position to collect $500,000+ from any proceeds from federal lawsuits filed by Garner.

For the record, Defendants Balin, Kirchner, Cocomise, and Glass, all Defendant City operatives/moles, all have committed crimes, several are felons, all are connected, all collectively have caused Plaintiffs to lose more than $1,000,000, and all at one point, have tried to entrap, involve, coerce, and or recruit Garner, in one way or another, with their rich successful criminal enterprises that are aided and abetted by the City and or Defendant Cook County.

In all fairness, Balin, Kirchner, Cocomise, and or Glass, may be mere "pawns", who may have been victims themselves of the powerful cabal of Defendant officials running the "scheme" for decades and may have been coerced into harming Plaintiffs, in furtherance of "scheme".

Indeed, while "scheme" had Garner entrapped/tied-up in 2004 Daley Center bogus building court case for about three years, Garner heard City attorney Stephen Peck seem to admonish Cocomise for lending Garner money and this year, Cocomise complained that the City made him spend an extra $100,000 above Cocomise's 6-unit Ellis property.

The current reality is that, although Garner has never been convicted of any crime by a jury of his peers, Garner is being forced again live like the fictional character played by actor David Janssen in the 1963 TV Series "The Fugitive" thanks to the "scheme's" existing DCFS investigation based upon Glass' fraudulent October 8, 2015-DCFS report.

Thus, Garner has been forced to do a lot of work on this complaint in a vehicle, using a 40-year old(?) typewriter and



#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

move around a lot more than necessary, because Plaintiffs must always

worry about the next illegal raid, due to the "scheme".

Therefore, this complaint, put together in piece meal fashion, is

is the best that the Plaintiff Garner can do, under duress, and represents

not half of the allegations Plaintiffs could substantiate and add to

improve this complaint by amendment, if Plaintiffs allowed access to evidence

that may still exist therein vacant looted subject property being held by

Kirchner for a $27,000 ransom while deliberately not properly secured by

DAWGS/Glass and Plaintiffs receive services of honest competent qualified

lawyers, who would know how to properly ask the Court for the injunctive

relief Plaintiffs need to successfully prosecute Defendants without disruption

from the "scheme".

Moreover, well educated extremely crafty Defendant officials have

intentionally made this case big, unwieldly, and expensive, by executing

numerous kidnappings(1994, 1995, 1997, 1998, and 2004) of innocent babies

or toddlers, and continuing to commit many new crimes against Plaintiffs,

during such two decade period, as to try to bury, the heart of this case,

which is that such Defendant had no legal grounds to kidnap four healthy

happy Plaintiffs on November 14, 1994(Exhibit #"B"), under a mountain of

lies, fraud, conspiracies, and other difficult to prove white collar crimes.

Thus, hoping and intending to make the case so big and complex, that

Plaintiff parents would never understand the "scheme" attacking them, and

even if parents did figure out what was being done to them, such Plaintiffs

would never be in a position to afford to hire a lawfirm big enough to file

a proper lawsuit to seek justice and redress for the damage done to ten

children and two parents.

Plaintiff Garner was delayed and blocked from filing this lawsuit for

(18.)

#3 Attachment:
   "PLAINTIFF FURTHER ALLEGES"(continued)

two decades for various reasons mostly related to the "scheme".

The delay was mostly caused by Garner being drawn into numerous cases
of fraudulent litigation, both civil and criminal, by the "scheme".

There was Garner tied up for five+ years in a foreclosure case set up
by Cocomise fraud, another three+ years in a building court case set up
by City fraud via Defendant Roberts two illegal 2004 raids at subject
property, another year+ in a bogus battery case by MB fraud in 2011, another
two years+ in bogus 1994 child neglect case set up by DCFS fraud, another
three years+ in probate case set up by Balins fraud via two forged deeds in 1994,
year+ in tax deed case set up by Balins fraud via perjury in 1998, another
three(?)+ years in juvenile court from 1994 set up by DCFS fraud,etc.

Thus, Plaintiff Garner subjected to about roughly Eight-teen years of
fraudulent litigation by Defendants in a Twenty-year period, not including
the two year+ fraudulent child endangerment case that forced Garner to plead
guilty to for the one and only time in Garner's 5 4 years on this earth
or about five years+ lost to Defendant State wrongfully closing numerous
valid complaints mostly related to "scheme".

Garner also was tied up(Exhibit #457) for about two-years around 1996
after Abraham contacted tenants that sued Garner and another year+ in bogus
eviction case set up by Rosestone fraud via perjury by Cook County Sheriff
Tom Dart's deputy(#11080) in 2013.

Therefore, Garner tied-up up for more than twenty-years of "scheme"
related, assisted, and or directly manufactured fraudulent litigation
in a twenty year period, without including any of Turner's fraudulent cases.

In addition, fraud by Rosestone  wrecked Garner's one and only
bankruptcy filed in 2012, in federal Court and "scheme" wrecked Garner's
2004 Daley Center guardianship case about Turner, who had a nervous breakdown
in 2002 and 2004, due to "scheme".

(19.)

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

Upon information and belief, Defendants, including but not limited to Illinois via DCFS representatives James, Garrett, unknown supervisor, unknown worker, Cook County via assistant states attorney Abraham, via public guardians Vera, Petersen, Cazares, Daskal, Robbins, Chicago via Chicago Police unknown cop-#1, unknown cop-#2, juvenile court coordinator Lund, Illinois via ARDC Kuller, private lawyers Fox and Brunn, all named conspirators in the aforementioned herein April 1, 1995-publication(Exhibit #131), did initiate ongoing enterprise and scheme described herein this complaint that has repeatedly, by various means including recruiting additional Defendants over two decades, caused serious injuries to Plaintiffs, and continues to cause Plaintiffs to incur ongoing costs for defending against the continued enterprise aimed to first expel Plaintiffs from subject property to financially ruin Plaintiffs and destroy a large amount of evidence to help cover-up this extraordinary case with potential unprecedented damages.

Over more than two decades, the ever escalating "enterprise" subjected Plaintiff parents to endless distracting disruptions, numerous conspiracies, and civil rights violations, all designed to forever prevent such Plaintiffs from ever having the wherewithal(evidence, time, money,etc) to file this case.

Thus, accordingly, "enterprise" expanded to include Defendants, but not limited to Illinois via DCFS Moore, via ARDC Larkin, Greggio, Abbatemarco, Cesario, via Attorney General Lipski, unknown worker, via IDHR Claps, Galbraith, Cook County via Sheriff Dart, deputy-#11080, unknown Sheriff attorney, Vournazos, Cramer-star#5060, Gercone-star#221, unknown deputy-#1, unknown deputy-#2, former deputy Bey, Chief Judge Evans, Kelly, Rosemary, Stroger Hospital, unknown worker, Chicago via law department Roberts, former Mayor Daley, Chicago Police Cline, Bartik, James Dowling, Strand-#2657, Ortiz, cop-#18692, unknown cops-#'s 3-7, private lawyers via Thomas More Society

20.

#3 Attachment:
"PLAINTIFF FURTHER ALLEGES"(continued)

unknown attorneys-#1, #2, Chertkow, Smith, Silverman, Ward, Rowells, Nevel,
private entities Rosestone, Domain, Swap, PC, MB, individuals via Balin,
Spearman, Davis, Kirchner, Cocomise, Edwards, unknown CTA bus driver,
unknown lawyer, Revis, Illinois via ICC unknown workers-#1, #2, #3,
additional private entities Cigna, Hartford, Brothers Submarine, and
Brothers Food, that all conspired with "enterprise" to injure and harm
Plaintiffs in various ways, including but not limited to financial damage
caused by theft, false reports, executing illegal raids, filing time
consuming fraudulent litigation, harassment, and or obstruction of justice
via perjury, conspiracy to destroy evidence, intimidation of witnesses,
conspiring to rig litigation, ignoring valid Plaintiff complaints, commiting
mail fraud, wrongfully closing Plaintiff complaints to cover-up crimes
committed by those favored by "enterprise", and other crimes.

Plaintiff James Garner was living st subject property with about 4,000
square feet including basement plus attic, with multiple vehicles, with no
criminal convictions, with a library of mostly law plus business books, had
won two civil lawsuits in state court, operated/managed successful businesses,
had never used any illegal drugs, smoked, or drank alcoholic beverages, and
in 1991, Garner took newborn Plaintiff JL Garner to Cook County Hospital,
where he was born in 1961, where Lorand filed one false report with DCFS,
that like the domino theory.......led ultimately to this federal complaint.

It is fact, that Garner, an undefeated high school chess champion in
tournament play, undefeated in judicial contest, and Executor of his late
father's estate with numerous properties in 1994, all of a sudden, after
Garner's release of the aforementioned April 1, 1995 publication(Exhibit #131),
became a loser of a criminal case, a loser of numerous Daley Center civil
cases, a loser in numerous complaints filed with Illinois regulatory

#3 Attachments:
"PLAINTIFF FURTHER ALLEGES"(continued)

agencies(Defendants IDHR, ICC, ARDC,etc), lost five children Plaintiffs

via four additional kidnapping incidents between 1995-2004, lost more

than six Estate properties, lost subject property with a 2005 value

of $300,000, lost a 2012 federal bankruptcy case, and Garner, a carpenter

trained in his late father's H. Garner and Sons construction company and

a self trained consultant, is presently about $600,000 in debt, all

because Garner exercised  his First Amendment right under the Constitution

to protest being "framed" seemingly more times than artist Leonardo da Vinci's

"Mona Lisa" and more importantly, justifiably refuse to make any deal with

the criminals that could kidnap innocent babies to execute their modus

operandi "code of silence" cover-ups, so rampant, in corruption rife Illinois.

JUDICIAL ECONOMY

In interest of judicial economy, this Court should be aware that all

three previous federal cases filed by Plaintiff Garner, including the two

currently pending actions, all were the result of the "enterprise" and thus

Plaintiffs would not object to the older cases being consolidated with

this case, if possible.

22.

#4 Attachment:
"PLAINTIFF FURTHER ALLEGES VIA ADDITIONAL NUMBERED ATTACHMENT"
(NOTE: This part of complaint created on computer lap-top seized by
        Defendant Sheriff Dart, during illegal November 10, 2014 raid
        at subject property; Due to time contraints and present
        exigent issues created by "enterprise", Plaintiffs was not
        in a position to re-type this portion of complaint.)

## COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF, RELIEF OF CIVIL RIGHTS AND RICO VIOLATIONS

Plaintiffs, for their complaint against the above-named Defendants,

alleges as follows:

### JURISDICTION AND VENUE

1.     This Court has federal question jurisdiction over this action

pursuant to 28 U.S.C. 1331 because Plaintiffs' claims arise under the United

States Constitution, the federal Racketeer Influenced and Corrupt Organizations

Act (18 U.S.C. 1961 et seq.), and 42 U.S.C. 1983 and 1985.

2.     Venue is proper in this judicial district under 28 U.S.C. 1391(b), because the parties reside in or formerly resided in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

### NATURE OF ACTION

3.     This case arises out of an ongoing enterprise and scheme initiated by representatives of the City of Chicago and Cook County, more than 2-decades ago, which eventually included, but was not limited to, the State of Illinois, Gilbert Balin, MB Financial Bank, and Allan Kirchner, that is aimed at both ousting Plaintiffs from their ownership, use, enjoyment, and ability to develop the property located at 5114 S. Damen Ave., Chicago, Illinois( the "Property"),  where Plaintiff JH Garner(Garner) once took in boarders and had ten Plaintiff children, who have all been subjected to severe harm by aformentioned scheme and Defendants conspiracy;  The enterprise against Plaintiffs is also a concerted effort by Defendants to keep Plaintiffs in constant financial straits over decades of using fraudulant harassing endless litigation, in a pattern of racketeering activity, to drive Plaintiffs from the Property, prevent Plaintiffs from being able to timely sue and or maintain a suit and violate Plaintiffs constitutional rights perpetuated by, among other things:

       i.)     1989, Chicago Police Officers and Cook County State's Attorney, conspired to attempt to frame Plaintiff for bogus unlawful restraint charge, after Officers executed false arrest of Garner at the Property.

       ii.)     1991, After Garner took newborn son Plaintiff JL Garner(JL) to Cook County Hospital, Defendant Lorand lodged false report to DCFS and conspired with Defendant Cook County State's Attorney to have a wrongful warrant issued to seize JL and Turner.

iii.)   1992, upon information and belief, convicted felon Defendant Balin conspired with Cook County officials and tried to use bogus tax deed case to steal the Property from Garner.

iv.)   1994, Balin filed or caused forged quick claim deeds to be filed at the Cook County Recorder's office and stole 3-properties from Estate of Henry Garner, whose Executor was Plaintiff Garner.

v.)   1998, in retaliation for Garner refusing Defendant Balin's Court house/Daley Center bribe and insisting upon a citation of Balin, Balin committed perjury in a tax deed case,  such fraud induced Court to give Balin a tax deed for the Property, Balin sent Defendant Kirchner to break-into the Property, and demand that Garner call Balin's office to work something out, because the "old gavel" had fell.

vi.)   1999, Garner had Balin's tax deed vacated because Balin's fraud/perjury was revealed to the Court and Garner made a police report against Balin's goons, except  Kirchner, because KIrchner's name was unkown.

vii.)   2003, Defendant City of Chicago filed a fraudulent housing court case against the Property, but did not name Garner in such action.

viii.)   2004, Defendant City cops, came to the Property and took two of Garner's children(ages three and four), to a known drug involved child raping family, despite Garner requesting that cops ignore mentally disabled mom and call a sergeant.

ix.)   2004, Defendant MB indicated that MB wanted to acquire the Property to expand;   When Garner indicated he was not intrested in selling, Defendant illegally raided the Property and stole about 15-vehicles from Plaintiff.

x.)   2004, after Garner complained to Defendant City about theft of vehicles, City attorney Mr. Jason Morgan Robert's retaliated with a second raid to obtain illegal evidence, and instantly evicted Garner's family from the Property.

xi.)   2004, Defendant Cocomise suddenly appeared, begin making unjust loans to Garner, repeatedly pressured Garner to sell Property to MB, and Cocomise soon wrongfully filed documents with the Cook County Recorder's office to steal the Property, after Garner had rejected MB's $130,000 written offer initiated in a Daley Center hallway, when Garner made initial appearance on City bogus 2003 housing code case used to repeatedly steal from Garner.

xii.)   2006, Defendant Cocomise continued to pressure Garner to sell to MB, when Cocomise told a City building inspector that the City was after Garner.   City inspector told Cocomise that the Property was not supposed to be in "Demo" court.

xiii.)   2007, Defendant Cocomise conspired with the City to coerce Garner into making a $173,000 Resmae loan, that Cocomise knew Garner couldn't afford.   Cocomise and City committed mortgage fraud to make sure Garner got the loan that would doom Garner to face foreclosure.

xiv.)   2008, Cocomise agreed to give Garner new loans, used Garner's consulting work to secure a roughly $250,000 loan on a Dorchester, Cocmise reneged on giving Garner loans, caused Garner to file federal complaint, Cocomise lied to government to get the investigation closed, and caused Garner to default on Resmae loan.

xv.)   2008,  Defendant Nevel filed a fraudulent foreclosure action against Garner, on behalf of Aurora Loan Services and Nevel, upon information and belief, conspired with Defendant Cook County, Defendant Evans, Defendant Kirchner, Defendant Dart, and Defendant City, to steal the Property in "Kangaroo" Daley Center courtrooms without court reporters, during an exhausting 5-year-foreclosure case that was fixed all the way up to the Illinois Supreme Court, who declined to hear foreclosure case in June 2014.

4.   The Defendants' conspiracy has caused serious injury to Plaintiffs, and continues to cause Plaintiffs to incur ongoing costs for defending against the continued enterprise aimed to expel Plaintiffs from Property.

5.   Garner has continuously owned and or occupied the Property for about twenty-five years.  He also speaks and communicates freely and honestly to the press, actively making his views visible and noticeable to the community and Defendants.   As a result, Garner "has been on the Defendants radar" for nearly 25 years", as a targeted businessman and property owner, as of this year.

6.   May 31, 2014, Defendant Kirchner confirmed and confessed to targeting Garner for more than a decade, during a one on one 45-minute high noon meeting with Garner, at a Chicago northside Mc Donald's fast food restaurant.  After Kirchner confessed to many crimes, pledged to make a deal to return deed of the Property to Garner and called Garner a genius, Kirchner tried to coerce and entrap Garner into committing crimes to unjustly enrich Kirchner and conspirators.

6.   The Defendants modus operandi has stayed the same over decades.  Each time Garner takes a public stand and exercises his right to free speech, files a complaint, or files a pleading to protect his rights, enterprise

conspirators lash out and abuse their authority by a spiral of increasing harassing bogus litigation and or criminal threats aimed at subjecting Plaintiffs to endless crippling distractions and further financial ruination, just to name a few of the tactics from Defendants, over decades.

7. July 11, 2014, it came as no surprise that Kirchner called Plaintiff Garner and subjected Plaintiffs to mob style intimidating threats which included, threats of another illegal break-in, another illegal eviction, and arson at the Property, after Garner's appeal attorney Stephen Sapporta filed a pleading with the Illinois Supreme Court to try to vacate the wrongful foreclosure that the enterprise used to steal the Property deed in 2012. Indeed, through the miracle of the Internet, anyone can vist YOUTUBE channel TriSunTV7-Exhibit 701 and hear Kirchner declare that his mob style criminal threats are off the record and if such crimes are brought into a Court of law, he will just deny his threats.

8. The pattern has been the same, for more than 2-decades, the enterprise conspirators have repeatedly found ways to severely harm Plaintiffs with retaliation, whenever Plaintiffs would take any action to resist their racketeering activities, try to get in a position to file a lawsuit against them, or merely try to make personal life improvements.

<u>1989 FACTS</u>

9. 1989, Chicago Police officers came to the Property, while Garner standing in doorway. Cops called Garner over to police car, Garner was searched, Garner had legally owned gun (44cal), and Garner taken to 9th-district station; Where homeless assistance group workers, who weren't allowed to enter the Property to see a former female client, retaliated by manipulating disabled female, conspired with cops, conspired with Cook County State's Attorney and try to frame Garner for unlawful restraint of female, at 9th district police station. Conspirators abandon bogus restraint charges after Cook County Hospital wristband proves Garner was emergency room patient, accompanied by two women, one of whom was alleged restraint victim. Conspirators then, confiscated Garner's handgun, jailed Garner on bogus UUW-charge, even though cops had requested that Garner come outside of the Property to answer questions about disabled female. Garner forced to appear at hearing, made motion to suppress, was exonerated again from the second bogus UUW within 7-years, and was forced to again pick-up handgun from Cook County Jail basement, per Court order.

<u>1990 FACTS</u>

10. 1990, Criminals were breaking windows at the Property and when Garner's family went to 9th-district police station for help, Defendant City/cops indicated that they knew family had a rooming house and rudely told family to leave station, without making a police report or offering any assistance. Thus,

enterprise, continues pattern of racketeering activity, by subjecting Garner to a **SECOND** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

### 1991 FACTS

11.    August 4, 1991, Plaintiff JL Garner(JL) was born to Plaintiff Turner.

12.    September 6, 1991, JL seemed to have a fever, Garner took JL and Turner to Cook County Hospital, where Lorand indicated JL had a slight fever and was healthy.   After Lorand began asking Turner improper questions and became rude with Garner, Garner left hospital with JL and Turner.   Garner took JL to another hospital, who also indicated JL was healthy.   Unbeknowst to Plaintiffs, Lorand made a false report to DCFS, who conspired with Cook County State's Attorney, to use an ex parte hearing to obtain a bogus Juvenile Court order that indicated JL needed emergency medical treatment.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **THIRD** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

### 1992 FACTS

13.    October 10, 1992, Plaintiff April Tina Garner(AT) was born to Turner.   JL lived a happy healthy life with his baby-sister.

14.    1992, upon information and belief, convicted felon Defendant Balin had his attorney Steven Dobrofsky file a tax deed case, conspired with Cook County officials and tried to use bogus tax deed(case-#92COTDS1153) to steal the Property from Garner.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **FOURTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

### 1993 FACTS

15.    May 25, 1993,  After a  Daley Center hearing, Garner prevailed over Balin and Garner kept the Property.

16.    1993, JL continued to live a happy healthy life with his baby sister AT.

### 1994 FACTS

16.     February 18, 1994, twin Plaintiffs James Richard Garner(JR) and Henry Malcom Garner(HM) were born to Turner.

17.     September 15, 1994, Garner's much revered father Henry Garner died; Per father's last wishes, Garner's 3-disabled(?) half siblings(*Phillip Garner-14-years?, LaSandra Garner-13-years?, & Latresa Garner-12-years?*) came to stay at the Property, and Garner was Independent Executor of father's estate.

18.     October 29, 1994, a small fire at the Property, in 1-first floor unit of 4-unit house, and Garner arrested for bogus child endanger life/health of child, upon Garner's return to the Property.   Disabled alleged victim Latresa Garner, who was taken to hospital in DCFS custody.   Cook County State's Attorney, Chicago police officers, and DCFS manufacture false reports, like falsely stating Latresa had been left home alone when fire started, despite fact that Turner and Garner's twin infant sons were also in the Property.   Although Latresa was asking to see Garner, enterprise conspirators held her hostage and hid away from Garner.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a dose/incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

19.     On November 14, 1994, around 10:45a.m, while Garner was still in mourning because of the death of his late father, trying to repair the minor fire damage, trying to find legal help to free Latresa, and still upset over false arrest, relentless enterprise conspirators/Chicago cops and DCFS illegally broke-in(fire department cut lock) front door to raid the Property.   DCFS *Lorne Garret & Kennedy James*, who allegedly only had stale three-year old 1991-juvenile Court order for temporary custody of JL.   Cop told Garner to either give them JL or all children would be taken.;

20.     Clearly, JL didn't need emergency medical care, three years later. Moreover, the 1991 Court order gave Cops no authority to break-in, raid, threaten, and immediately retaliate, by taking everyone from  the Property; Thus, such November 14, 1994-conduct at the Property, which included kidnapping babies, from representatives of the City of Chicago and State of Illinois, represents a second incident of racketeering conduct, that Garner was subjected to, since acquiring the Property in 1989;

21.     Cops search all four units of the Property without a proper warrant, took nine-people(*3-adults[including April Killiebrew] & 6-minors*) from subject property to police station and nine people were detained for about 7-hours or more without charges.   Adults interrogated, humiliated, and threatened with arrest for obstruction.   Food, infant formula, and water with-held for hours from 4-babies(*JL-3 years, AT-2 years, & twin infant boys[HM-7-months & JR]*) and

other 5-detainees, who were told not to move from room with hard benches, Mirandi rights weren't read, no phone calls allowed, and bathroom use with-held for hours(about 2), even though Turner was pregnant.   Cops screamed at small children, took JL outside of room without parent's permission, and misspent Garner's money on food.  Around 3:20p.m, Garner was allowed to call an attorney on police phone, and Garner was advised to remain silent, ask to be charged or freed,etc.  The attorney called the station, talked to watch commander, then called Garner about 4:30p.m, told Garner that Commander had stated that they were not going to charge anyone or free anyone, until other DCFS officials arrive;

22.     In clear retaliation, for exercising constitutional right to remain silent, enterprise conspirators/Cook County State's Attorney, DCFS, and cops conspire to frame Garner, Turner, and Killiebrew for multiple counts of bogus child neglect, after DCFS had ordered raid with only the authority of a stale secret ex parte 1991 juvenile warrant alleging JL was in need of emergency remain silent as to which child was which, Defendants in retaliation, transported nine people to police station without charges, Plaintiffs unlawfully detained in police station for hours without charges, food, or water, and then, Defendants decide to frame three adults with multiple misdeameanor child neglect charges manufactured with false police reports to create grounds to kidnap Garner's 4-babies and two teenage half-siblings(*Philip and LaSandra Garner*).   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **SIXTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

23.     November 15, 1994, Garner released from bogus child neglect arrest, returned to the Property, Turner's child-abusing step-father Henry Hickman threatened Garner during phone call, Garner made police report, Chicago Cops arrest Hickman at 5331 S. Laflin, Cops told Garner to come to 9th-district station to sign complaint, and after Garner arrived, Cops tell Hickman to press charges against Garner.   Once again, racketeering representatives from City of Chicago conspire with criminal Hickman to target Garner, who was wrongfully lured into an unjest arrest on bogus assault charge manufactured at the 9th-district station.   Therefore, within hours of suffering inhuman emotional distress of having 4-babies kidnapped by enterprise and being released from wrongful jailing, Garner was again wrongfully held in jail for many grueling hours, and later, after Garner forced to appear at hearing, Garner was again exonerated from bogus assault charge, orchestrated by Chicago Cops. Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **SEVENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

24.     December 1994, While Garner was being overwhelmed by the full weight of the three levels of racketeering government conspiring against Plaintiffs and also while Balin may have been on federal probation(*criminal case#90CR0964[USA v. Gilbert Balin and Mattie Spearman]*) for ripping off HUD, Balin manufactured two bogus quick claim deeds, forged Garner's late fathers signature twice, and looted the Estate of Henry Garner, of three buildings, which would become worth hundreds of thousands of dollars each between 1998 through 2008.   Balin's bogus deeds where filed in the Cook County Recorder's Office, with the criminal friendly Cook County government, who deliberately maintains and condones easy house stealing system to aid and abet connected white-collar pay to play real estate racketeers, like Balin and Kirchner, and clearly represents an incident of racketeering conduct.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to an **EIGHTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

<u>1995 FACTS</u>

25.     On April 1, 1995, Garner released 4-sheet/8-page flyer(*"Free Tina Turner's Babies- Campaign"[naming some of the corrupt government officials{Cook County Guardians Luis Vera, Erika Petersen, Ricardo Cazares, Meryl J. Daskal, & Leslie Robbins;  mole bar attorneys Robert F. Brunn & Michael Fox;  Court Coordinator Mary Lund;  assistant states attorney Abigail Abraham, and ARDC Counsel Althea J. Kuller} involved, telling the story and naming the white-collar liars who buried 7-babies under years of calculated lies,etc]*), following up nation-wide letter-writing campaign(White House, newspapers, ACLU,etc), street protest, and making people aware of unconstitutional Cook County Juvenile Court system. Thus, accused murderers in Illinois, have more rights than accused parents.   An accused murderer faces a States Attorney and if they win the case, the accused murderer goes free.   An accused parent faces a States Attorney, and if they win the case, the accused parent must find funds to pay another lawyer to go to Juvenile Court to face 3-different lawyers(*including States Attorney, Public Guardian, DCFS,etc*) and win or your children can stay incarcerated in dangerous DCFS dungeons. Therefore, Garner has been incarcerated for almost 2-decades, along with seven of Garner's children.  Tina Olson(*who was striving for the return of her son from City of Chicago Alderman Ed Burke*) told Garner(*who was a member of Ms. Olson's group*) that she saw Garner's flyer posted on a government agency bulletin-board in Juvenile Court.  Offering further proof that Garner has been targeted by enterprise, for decades.  By design, in addition to fraudulent litigation, enterprise also attacked Garner's financial wherewithal, making it impossible for Garner to defend himself from gang of lying Juvenile Court lawyers, who enjoyed protection of endless cover-ups by ARDC lawyers, who are charged with the responsibility of investigating wayward lawyers that violate the Illinois Rules of Professional Conduct.   With almost nowhere to seek justice in

corruption rife racketeering Illinois government, Garner turned to his
1st-amendment rights and the enterprise escalated their level of retaliation.
Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner
to a **NINTH** incident of expensive harassing fraudulent litigation and or blatant
violation of Garner's constitutional rights, since aforementioned 1989 UUW
arrest.

26.     On April 6, 1995, the estate(#95P2285) of Garner's father Henry M.
Garner was open, the Court appointed Garner as Independent Executor, and per
aforementioned racketeering conspiracy, Garner's ability to focus on executing
estate business was being interfered with.

27.     On June 17, 1995, Plaintiff Tina Abigail Garner(TA) was born and
in less than a couple of months, Garner's daughter was personally kidnapped in
the old Domestic Court(*13th & Michigan*) hallway by Cook County Assistant
State's Attorney Abigail Abraham, when Garner and Turner arrived to face bogus
1994 child neglect charges, that were soon dropped, as Garner's
1st-amendment campaign gained momentum, for example, garnering a letter
from the White House. This kidnapping was both in retaliation for Garner
exercising 1st Amendment right, in furtherance of conspiracy related to
aforementioned enterprise, and yet another incident of racketeering conduct
from the Cook County State's Attorney.  Thus, enterprise, continues pattern of
racketeering activity, by subjecting Garner to a **TENTH** incident of expensive
harassing fraudulent litigation and or blatant violation of Garner's constitutional
rights, since aforementioned 1989 UUW arrest.

28.     1995, In furtherance of racketeering conspiracy, Enterprise
conspirators/Cook County State's Attorney and DCFS, conspire to separate,
isolate, and coerce Garner's 3-disabled half-siblings into allegedly making false
statements against Garner, interfere with Garner's legal funding source,etc.

<u>1996 FACTS</u>

29.     1996, Cook County State's Attorney and DCFS, conspire to subject
Plaintiffs to unfair unconstitutional Circuit Court of Cook County juvenile
"Kangaroo" court hearings, where Plaintiffs denied a jury trial, denied un-biased
legal representation, faced unjust "double-jeopardy" of having to prevail against
criminal charges, and then, having to prevail against juvenile court charges.
Moreover, both criminal and juvenile charge hearings are being held in different
locations, causing unfair impossible expense for indigent parents.   Furthermore,
parents must also face 3 or 4 government agencies in the juvenile Court
hearings, including the aforementioned above herein Cook County Public
Guardians, DCFS, Cook County State's Attorney,etc.   Despite having access to
medical records that proved Plaintiff JG's 4-babies were completely healthy

when kidnapped, DCFS demanded that parent Plaintiffs take parenting classes to help enterprise conspirators cover-up frame-up and kidnappings OR face cruel and unusual inhumane heinous punishment of never getting custody of 4-babies again.

30.    Unbeknownst to Garner, Garner's defense attorney was under ARDC penalty when hired, Garner arrested for being late to 1996-hearing, and Garner held in jail without bond by Cook County Judge James Linn, until Garner hired another attorney that made guilty plea deal with Cook County State's Attorney.  Without kidnapping Garner's 3-disabled teen siblings against their will, isolating such siblings from Garner and other wrongful tactics, conspirators would have never secured the only conviction in Garner's life.

31.    At this point, upon information and belief, Chicago Cops broke into the Property and stole four handguns from Garner, while Garner was still in custody, due to Judge Linn's wrongful order.  It is highly unlikely that burglars would bypass more expensive professional camera and video tape equipment, while taking only guns that were stored in the same cabinet.

32.    Around 1996, Garner began to be aware that his family was being subjected to a systematic attack, which included being targeted by various State of Illinois agencies, including, but not limited to the ARDC and the Illinois Department of Human Rights(IDHR);   Cook County agencies, including, but not limited to Cook County Circuit Court, Cook County States Attorney, Cook County Public Defender, and Cook County Public Guardian;   and the City of Chicago agencies, including, but not limited to the law department, 9th-district police, buildings department, water department and streets & sans department.

33.    Around 1996, on information and belief, Abraham contacted tenants of an estate property(*1156-58 W. 63rd Street, Chicago Illinois*), controlled by Executor Garner, and coerced and or conspired with tenants to distract Garner from his legal fight to free his children and terminate the payment of about $2,000 in monthly rent payments, mainly used as legal funding.   Thus, assured of a favorable outcome,  both tenants sued Garner, enterprise orchestrates new litigation to subject Garner to, a Daley Center Cook County Judge ruled against Garner, and such rent payments ended, until a judgement was resolved.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **ELEVENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

34.    Around 1996, Cigna Insurance executives arrived at a settlement meeting, to settle a discrimination complaint about Cigna's failure to pay a roughly $30,000-loss claim, filed by Garner with the IDHR, Garner arrived minutes late because such meeting was scheduled on same day as a hearing for

bogus 1994- child neglect charges, and IDHR refused to reschedule such settlement meeting. Under great stress from enterprise, Garner had no time to find a lawyer to collect such settlement from Cigna. So, Garner lost, at least $30,000, due to the racketeering enterprise. Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **TWELFTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

## 1997 FACTS

35.     January 14, 1997, Plaintiff James Julius Garner(JJ) was born to Turner at Mercy Hospital. Hospital and DCFS conspired to kidnap Garner's infant son, just hours after JJ was born. This kidnapping was both in retaliation for Garner exercising 1st Amendment right, in furtherance of conspiracy related to aforementioned enterprise, and yet another incident of racketeering conduct from DCFS and the Cook County State's Attorney. Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **THIRTEENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

36.     1997, around this time, after Garner/Executor had rejected Balin's August 8, 1996-Daley Center hallway bribe in front of estate attorney Glenn Chertkow to replace property stolen from estate and reward Garner with a lucrative position in Balin's real estate racket, if Garner would only close estate, cheat his siblings, betray Garner's revered late father's wishes, and cancel citation of Balin about the forged deeds. Upon information and belief, convicted felon Defendant Balin had his attorney son Timothy Balin file a tax deed case, conspired with Cook County officials and tried to use a SECOND bogus tax deed case(-#97COTDS0821) within 5-years, to steal the Property from Garner, for the purpose of intimidating witness/Garner to aforementioned forged deeds and coercing Executor to violate his fiduciary duty to seek the return of the stolen three properties. Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **FOURTEENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

## 1998 FACTS

37.     On October 7, 1998, Plaintiff Hillary Latoy Garner(HL) was born at what is now known as Rush University Medical Center with a breathing problem, doctors tried to send Garner's daughter home on an air machine, Garner wanted a second opinion, and refused to take HL home in that condition, especially while the Property was under attack by enterprise. Hospital and DCFS conspired to kidnap Garner's infant daughter. Garner's daughter kidnapped by State of Illinois(DCFS), Court guards tried to start a fight with Garner, and Garner learned

that the Cook County State's Attorney and or DCFS had falsely alleged that Garner's daughter was born with cocaine in her system, lab tests confirmed that cocaine allegations were bogus. This kidnapping, guard intimidation, and yet, another frame-up attempt, were both in retaliation for Garner exercising 1st Amendment right, in furtherance of conspiracy related to aforementioned enterprise, and yet another incident of racketeering conduct from DCFS and the Cook County State's Attorney.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **FIFTHTEENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

38.    December 17, 1998, Balin committed perjury before Honorable Cook County Daley Center Judge Bernetta D. Bush to induce her to give him 1998 tax deed to the Property, after an enterprise orchestrated ex parte hearing, unbeknownst to Garner.    Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **SIXTEENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

39.    In 1998, Garner bought insurance and paid timely monthly Hartford Insurance premium payments, about 6-months before a big fire at the aforementioned 1156-58 W. 63rd street-property.   Tenants insurance companies paid the tenants for fire losses, Hartford paid $10,000 against hundreds of thousands in damages, Garner's lawyer filed $750,000-lawsuit against Hartford in Daley Center, Garner's lawyer disappeared, Garner's case was dismissed, and the Daley Center Judge never notified Garner that Garner's lawyer failed to appear and that the case was dismissed around 2000.   Under great stress from enterprise, Garner had no time to properly monitor or keep track of case and to timely find a lawyer to collect compensation from Hartford. So, Garner lost about $740,000 and would soon lose the 63rd street property, that had been in Garner's family for about 25-years..........an additional $250,000 loss, due to the racketeering enterprise.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **SEVENTEENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

<u>1999 FACTS</u>

40.    March 3, 1999, Balin's buffer co-felon Mattie Spearman sent goons, including Fernando Rivas to commit criminal damage(*break-down front door of subject property*), trespass, and deliver threatening intimidating message to Executor Garner, whose estate lawyers had already scheduled a May 10, 1999-Citation of Balin about aforementioned 2-forged deeds filed at the Cook County Recorder's office in December 1994, a few months after Garner's father died.   One of Balin's goons said that a Daley Center judge had "dropped the old

gavel" giving subject property to Balin, subjected Plaintiffs to extreme emotional distress, subject Garner to threats and directed Garner to immediately call Defendant Balin's office at 100 N. LaSalle.  Instead, Garner called estate lawyers, who filed an emergency motion in Daley Center, that led to subject property being returned to Garner on May 5, 1999 via Honorable Judge Bush's order and Garner made a police report(rd#-C650671) against Spearman and one of the goons(Rivas), which led to criminal hearings at Branch 34(155 W. 51st) against Spearman and Rivas(99MC1234002).  Garner recalls, Cook County Assistant State's Attorney  Anita Alvarez protecting and failing to prosecute Spearman, after Garner was forced to spend money appearing at numerous hearings at Branch 34 that Spearman failed to appear, no warrant was issued, the case was dropped, Garner got no justice, lost about $2,000 in property damage, and all this proves that Balin has clout with the City of Chicago and Cook County.  Garner contacted Cook County State's Attorney officials about Balin's crimes and such officials failed to intervent, wrongfully protecting enterprise members Balin, Spearman, Rivas, and Kirchner, who would later(May 31, 2014) admit that he was one of Balin's goons who broke-into the Property, and this interfered with Garner's ability to file a lawsuit against Balin to recover damages.  Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **EIGHTEENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

41.     November 27, 1999, Plaintiff James Amistad Moses Garner(JA) was born to Turner at Michael Reese Hospital.  Thus,  JA has been wrongfully deprived of knowing  most of his older brothers and sisters, due to this ongoing pattern of monsterous racketeering activity, described herein.

<u>2000 FACTS</u>

42.     January 13, 2000, Garner was still being induced to appear futilely at monthly criminal hearings for Spearman, who never bothered to appear. Under great stress from enterprise, Garner had no time to find a lawyer to collect compensation from Balin.   So, Estate of Henry Garner lost hundreds of thousand of dollars, due to the racketeering enterprise.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to an **NINETEENTH** incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

43.     September 14, 2000, Executor Garner received a letter from Cook County Assistant State's Attorney Michael C. Prinzi that indicated that Cook County would not prosecute Balin for the aforementioned 2-forged deeds and invited Garner to go after Balin via a civil action.

## 2001 FACTS

41.     January 5, 2001, Plaintiff James Edward Socrates Garner(JE) was born to Turner at Michael Reese Hospital.   Thus,  JE has been wrongfully deprived of knowing  most of his older brothers and sisters, due to this ongoing pattern of monsterous racketeering activity, described herein.

43.     June 25, 2001, Garner wrote Daley Center Judge Robert W. Bertucci about Balin and lawyers who aided and abetted Balin's attempt to escape prosecution and liabilty for the property he stole from the estate.

44.     July 31, 2001, Anagraphics Inc sent a Report and Opinion to Garner that confirmed that Garner's late father's signature was forged on the aforementioned three properties stolen from Estate of Henry Garner.

## 2002 FACTS

45.     2002, Turner had a mental break-down, due to severe stress caused by decade plus aforementioned enterprise conspiracy that resulting in kidnapping of 7-babies, numerous frame-ups,etc.  Turner walked off in a daze, ended up in clutches of her vile family(*who caused her social security disablility check[received for a decade] to be terminated*), Chicago Cops failed to properly investigate missing persons report made by Garner, and Turner missed more than a decade of disability checks, due to enterprise ongoing conspiracy to attack, harass or impede Plaintiffs at every opportunity.

## 2003 FACTS

46.     2003,  per Defendant MB Financial Bank('MB") decision to conspire with City of Chicago to join aforementioned enterprise, City of Chicago lawyer Jason Roberts filed fraudulent illegal building code case(*#03M1404565/*) against vacant lot and after an ex parte hearing, Roberts obtained a Court-order.

## 2004 FACTS

47.     January 2004, as part of such ongoing enterprise conspiracy described herein, unknown Chicago Police wrongfully took both JE and JA , who were defenseless toddlers(about 3 and 4-years old) ,  over the objections of Garner to the equivilant of a "lion's den at Brookfield Zoo"(*to borrow a quote from a federal judge regarding the Chistina Eilman case[# ]* ), such kids were predictably brutally attacked in 2004 over a 20-day-ordeal in a Milwaukee pedophile dope-house, boys sustained permanent damage, higher-up cops failed to intervene, cops apologized, and all this could have been avoided, if Cops had not ignored Garner, like they ignored Ms. Eilman's parents in 2006.

Indeed, Cops clearly heard Garner explain that Turner was a permanently disabled gun-shot victim, who was having a nervous breakdown and thus, Garner requested that Turner be taken to a hospital and Garner requested that a Sergeant come to the scene. The female Cop played Doctor, indicated Turner looked okay, and she declared she was taking Turner plus two toddlers(JA & JE) to Turner's aunt's house. For more than a week, Garner called cops dozens upon dozens of times, made police report, and wrote letters, includig one to former CPD Superintendent Cline. Although Cline had Commander Bartik to write Garner and Cops to contact Turner in the Milwaukee dope house, Cline failed to rescue Turner or Garner's two sons. Finally, after almost 3-weeks, Garner got a letter from Turner and was able to drive hundreds of miles to Milwaukee and rescue Turner and two sons, who smelled like illegal drugs and sustained permanent damage. JA has been receiving social security disability, for almost a decade. This is yet another incident of racketeering conduct from the City of Chicago. Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **TWENTIETH** dose/incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

48. May 28, 2004, under color of law, Defendant Roberts orchestrated an illegal raid on the vacant lot south of the Property, and stole 15-vehicles from Garner, using aforementioned fraudulently obtained 2003 building code case order(#03M1404565). Garner legally bought most of vehicles from City of Chicago auctions, after City of Chicago had seized such vehicles from mostly Chicago citizens. Seems like organized crime, when an entity sells property to a citizen and then executes illegal scheme to steal the vehicles back from the same citizen. This is yet another incident of racketeering conduct from the City of Chicago. Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **TWENTYFIRST** dose/incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

49. July 12, 2004, Supervising City Attorney Marc Liamanni and Roberts ignored Garner's letters sent around June 1, 2004 and used the same illegal 2003 Court order to conduct a second illegal raid at the Property to collect interior evidence, illegally evict Plaintiffs, and retaliate against Garner for sending letters complaining about 15-stolen vehicles. Proving willful wanton wrongdoing, by City of Chicago. Judge Dan Lynch ignored City crimes on 07-15-04 and let City file new case(#04M1402291) against Garner on 07-18-04. This is yet another incident of racketeering conduct from the City of Chicago, Judge Lynch, and MB customer Otis Davis, who appeared uninvited at hearing, lying to the Court. Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **TWENTYFIRST** dose/incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

50.     City attorney Stephen Peck filed bogus demo case against Garner in 2004, years in demo court(*#04M1402538*) with crooked inspectors saddled home/the Property with $100K+ in City created debt, and MB connected hard-money lender Phil Cocomise took lion's share of fraudulent $172K? 2007 Resmae loan.

51.     These 2004 incidents are among the latest in a long string of harassing actions by MB against Garner and Turner taken in retaliation against them for refusing to sell MB their house in 2004 (so that MB could build additions to its facility located next to their home), including but not limited to closing their bank accounts, causing trash to be placed on their property on a weekly basis, and making baseless complaints to the City whenever Garner attempted to make repairs to his property, and damaging Garner's property.

### 2005 FACTS

52.     February 9, 2005, Garner filed housing discrimination complaint with the IDHR, Lead investigator Jacquelyn Turner Hamb investigated Garner's complaint, and determined that an IDHR CHARGE should be filed against MB and the City of Chicago.   Some higher ranking public servant, removed Hamb, replaced Hamb with someone who manufactured wrongful reasons to close case, and covered up case, protecting MB and the City of Chicago.

### 2006 FACTS

53.     2006, Garner retained attorney John Kneafsey to send letters to MB and the City, requesting that Defendants stop harassing Plaintiffs.

54.     2006, Defendant Cocomise wrongfully concealed the death of Trustee attorney Berthold Schreiber and Cocomise fraudulently filed quit-claim deeds at the Cook County Recorder's office to make Cocomise the owner of the Property.   Thus, Cocomise was conspiring with MB and the City to join enterprise, with Cocomise's incident of racketeering conduct.  This is yet another incident of racketeering conduct from the City of Chicago, MB, and former MB customer Cocomise, who appeared out of nowhere to start making usurious high interest loans to Garner, beginning in 2004.  Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **TWENTYSECOND** dose/incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

### 2007 FACTS

55.     July 2007, Cocomise and City of Chicago conspired to manufacture fraudulent documents and or false statements to help orchestrate fraudulent

Page 18

$172,000 loan for Garner with Resmae Mortgage;    For example, City of
Chicago created bogus water certification, lying about existance of water meter
in basement of the Property, knowing the loan would have never closed if the
City water department told the truth, there was no meter and the City water
department had not been in basement.  Cocomise created and or signed
document saying Garner's payment history was current with him, when
Cocomise knew Garner had been in default for years, while City kept Garner
tied-up in Court.  Conspirators knew Garner was on fixed income, couldn't afford
monthly payments that were about double Garner's income, and would soon
default.  Cocomise took lion's share of loan and promised to make additional
loans to Garner, so Garner could acquire rental real estate to boost income to
avoid default.   However, Cocomise refused to make timely loans to Garner, after
Cocomise realized a $100,000 check, when the Resmae deal closed. Garner
complained to IDHR, and Cocomise lied to government, to get complaint closed.
While Cocomise continued to mislead Garner about his good intentions,
Cocomise continued to secretly meet with conspirators like Kirchner to  assist
aforementioned enterprise.   This is yet another incident of racketeering conduct
from the City of Chicago, MB,  and Cocomise.   Thus, enterprise, continues
pattern of racketeering activity, by subjecting Garner to a **TWENTYTHIRD**
dose/incident of expensive harassing fraudulent litigation and or blatant violation
of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

<u>2008 FACTS</u>

56.    September 19, 2008, Kirchner attorney Defendant Ira Nevel filed
fraudulent foreclosure case(#08CH34917) against Garner, when he knew or
should have known that his other client Aurora, didn't have an interest in the
Property, had no standing, and on the day bogus case was filed, Garner didn't
owe Aurora a dime.  Instead, of just dismissing case and filing a proper case,
Nevel used his connection to enterprise conspirators to keep bogus case in
Court and cause Garner to go to great expense, of appealing case all the way to
the Illinois Supreme Court. Although Defendant Chief Judge Timothy Evans
received many letters and emails about how dishonest connected lawyers like
Nevel were running Daley Center courtrooms without official court reporters,
Evans did nothing about the need for permanent court reporters.   This is yet
another incident of racketeering conduct from the City of Chicago, Nevel, MB,
and Evans.   Thus, enterprise, continues pattern of racketeering activity, by
subjecting Garner to a **TWENTYFOURTH** dose/incident of expensive harassing
fraudulent litigation and or blatant violation of Garner's constitutional rights, since
aforementioned 1989 UUW arrest.

<u>2009 FACTS</u>

57.   , 2009, Garner was summoned to Daley Center on another matter
and once again learned that a bogus case(#08CH34 had been filed, no proper

notice to Defendants rendered, ex parte hearings had been going on for months in courtrooms without court reporters, Nevels had committed crime of filing false affidavit to shorten redemption, and other wrongdoing.

## 2010 FACTS

58.     November 15, 2010, after Judge Pamela Gillespie ruled that foreclosure Plaintiff didn't have standing and indicated that Garner had a viable defense to the foreclosure case(#08CH34917), enterprise conspirators like MB, Chicago Police, and Cook County States Attorney had Turner falsely arrested about 30-days after ruling, on a stale 2-year old police report.   A cop tried to illegally enter the Property, someone ordered court reporters not to come to any future hearings, and the Judge was soon replaced.   This is yet another incident of racketeering conduct from the City of Chicago, MB, and Nevels.  Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **TWENTYFIFTH** dose/incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.

59.     December 16, 2010, Turner was arrested and detained for eight hours by Chicago Cops for alleged property damage to Defendant MB Financial Bank("MB") security cameras, such damage allegedly having taken place over two years before the arrest. She was ordered to appear in court upon release on December 16, 2010. Turner did not commit the crimes for which she was charged, and video evidence shows this.

60.     December 16, 2010, a Chicago Police Officer went to Garner's residence and threatened him, noting that MB wanted them out of their house.

## 2011 FACTS

61.     January 11, 2011, Plaintiff Kim Violet Garner(KV) was born to Turner at Jackson Park Hospital, and has never seen any of her older 7-kidnapped brothers and sisters.   Thus,  KV has been wrongfully deprived of knowing  most of her older brothers and sisters, due to this ongoing pattern of monsterous racketeering activity, described herein.

62.     MB's actions have been in collusion with the City of Chicago, including but not limited to the two aforestated false arrests and malicious prosecutions, various threats of arrest and removing their children from the home (stated in connection with mention of MB's hostility toward them), various baseless administrative complaints and actions scheduled purposely to conflict with other court dates (to cause Plaintiff to default), and removal

Page  20

of fifteen vehicles belonging to Garner from his property. These actions have resulted in Plaintiffs home/the Property staying in foreclosure for years.

## 2012 FACTS

63.     2012, Garner files first bankruptcy in a life-time and Nevel wrecks Garner's bankruptcy with more fraud in federal court.

## 2013 FACTS

64.     May 1, 2013, Former Plaintiff attorney Jason Craddock, was notified of Plaintiff request to file a Motion for extension, due to ongoing systematic harrassment of Plaintiffs by Defendants, who were continuously interfering with Plaintiffs ability to prove case.   Craddock hid harassment from the Court in May 2013 and Craddock hid conflict of interest issue from Plaintiffs for about a year, as Craddock aided and abetted Defendant MB and City.

65.     October 18, 2013, in furtherance of aforementioned conspiracy in case, Plaintiffs subjected to defending harrassing expensive time-consuming fraudulent litigation of eviction case-#13M1724672(*Rosestone Investments,LLC v Garner,Turner,etc*), when Cook County Sheriff Tom Dart's Office conspired to manufacture two false affidavits created by perjury from Deputy Sheriff-star-#11080, who swore Mr. Ray Justin resided at Plaintiff's home/the Property/5114 S.Damen to take  substitute service for Turner and Mr. Jessie Grant took substitute service for Garner.  This is yet another incident of racketeering conduct from the Cook County Sheriff and Nevel, who filed affidavits and created fraud upon Court.   Thus, enterprise, continues pattern of racketeering activity, by subjecting Garner to a **TWENTYSIXTH** dose/incident of expensive harassing fraudulent litigation and or blatant violation of Garner's constitutional rights, since aforementioned 1989 UUW arrest.  (SEE two Affidavits).

66.     October 18, 2013, Defendant Cook County Sheriff Tom Dart's Office, via Deputy badge-#11080 manufactured false substitute service affidavit to aid and abet Nevel filing a bogus eviction case against Garner and Turner in the Daley Center.

67.     October 30, 2013, Defendant MB had male conspirator/Digby's security guard to come off of bank property, point gun at head of disabled gunshot victim Plaintiff Turner, threaten to kill Turner, begin to roughly manhandle Turner to public side-walk, place his full body wieght in crushing manner upon Turner, made contact with Plaintiff Garner as Garner tried to intercede, caused severe injuries to Plaintiffs that Plaintiffs have yet to recover from, publicly humiliated Plaintiffs, caused Plaintiffs to suffer extreme emotional

distress, caused Defendant City of Chicago to send a unknown male conspirator/sergeant/cop to run-up to begin trying to break Turner's left arm plus shoulder as Turner was still pinned on sidewalk being held by MB guard, caused Turner to suffer additional severe injuries deliberately caused by Cop, publicly slandered Turner by falsely stating that Turner's damage to MB property provoked his attack, caused Turner to be denied an ambulance as Turner pleaded to be taken to hospital as Turner was roughly hand-cuffed then forced into back of police SUV, and caused Turner to suffer in extreme pain for about 30-minutes as conspirators conspired to falsely criminally charge Turner with battery of guard.

68.    October 30, 2013, MB caused Turner to be further humilated by Cops as Turner was shuffled from police station to station over about 12-hours to delay her release from custody, Turner treated at St. Bernard Hospital, caused Garner to suffer additional emotional distress as he frantically called police to learn where Turner was, caused Garner to file a complaint against police, caused Garner to drive his children to the 51st Wentworth police station around midnight to pick-up Turner, caused already overwhelmed Garner to draft communications to contact lawyers(both criminal defense & civil litigation) to explore legal options to address new cause of action manufactured by MB's unlawful decision to retaliate plus attempt to intimidate witnesses/Plaintiffs in currently pending federal case(#12cv9994[Turner v. City,MB,etc]), caused Plaintiffs the expense of attending a bogus criminal hearing where MB failed to appear and Plaintiffs ordeal plus injuries has been substantial.

<u>2014 FACTS</u>

69.    May 31, 2014, Plaintiff Garner invited to high noon 45-minute meeting at northside McDonald's, where Defendant Kirchner subjected Garner to further emotional distress, as follows:

70.    May 31, 2014, Kirchner stated that he was a friend of white collar real estate racketeers, including federal convicted felon Defendant Balin(90CR0964[USA v ]) connected to Defendant City, and protected by various Cook County public officials, Judges,etc.

71.    May 31, 2014, Kirchner said Balin gave him the Property deed, obtained by perjury in fraudulant tax deed case(97COTDS0821), sent Kirchner's crew to break into Plaintiffs home/the Property in 1999, told Plaintiff to call Balin's office to make deal, because Plaintiff Garner/Executor's lawyers had Balin facing citation to try to recover 3-homes stolen in December 1994 using forged quit claim deeds, while possibly on federal probation for using mortage fraud to rip-off HUD for hundreds of thousands of dollars. Defendant Cook County States Attorney office covered-up criminal complaints by refusing to

prosecute offenders for break-in, where Mr. Kirchner admitted meeting Garner, but Garner didn't know his name then and could not file a police report for him.

72.    May 31, 2014, Kirchner indicated he bought Resmae mortgage note around 2010, knowing Garner, in part, to target and retaliate against Garner for filing 1999 criminal charges against Kirchner's crew.

C.)    Kirchner says that he and his attorney Nevel knew they were using a fraudulent foreclosure case(#08CH34917) to steal subject property, while all along knowing that they were supposed to have the foreclosure case dismissed and file a proper mortgage fraud case.

D.)    Kirchner indicated he had a Cook County Judge that was supposed to jail Garner.

E.)    Kirchner said that he talked to Nevel about harming Plaintiff Turner;  Kirchner threatened "to slap her ass into the street".

F.)    Garner told to find house Kirchner would accept and Kirchner would trade subject property deed back to Garner.  Kirchner tried to coerce Garner into working in real estate racket, by practicing law without a law license, to help defraud big banks like Wells Fargo.  Kirchner bragged about buying $20,000 in drugs from real estate racket profits.

70.    June 11, 2014, Kirchner subjected Garner to further emotional distress, when Kirchner became angry that Garner's attorney Stephen Saporta filed a motion in Illinois Supreme Court, and Kirchner repeatedly talked about committing crimes against Plaintiffs, made statements, and or indicated the following:

A.)    Kirchner demanded that Garner stop Saporta from filing any more appeals that were costing him money.

B.)    Kirchner indicated that if Garner used threats in Court, Kirchner would just deny he made the statements.

C.)    Kirchner tried to coerce Garner into committing arson in an insurance fraud scheme to help come-up with the $37,000 he was demanding for the Property deed that is probably worth less than $10,000.  Otherwise, Kirchner demanded that Garner forthwith give him a deed to trade or he would personally illegally evict Plaintiffs from property........throwing Garner's library into the street.

D.)    Kirchner indicated he was interfering with Plaintiffs pending case, with MB communication,etc.

71.

## Conclusion

WHEREFORE, Plaintiff urges that this Honorable Court award judgment for Plaintiffs against all Defendants for all of their egregious actions described above; specifically, Plaintiffs urge the award of actual and compensatory damages, and exemplary damages.

**Jury Trial Demanded**

By:  James H. Garner
Plaintiff
P.O. Box 368371
Chicago, Illinois 60636
Phone:  (224) 650-4677
Email:  BusinessConsult1@yahoo.com



*Chicago Tribune*

## Ask Amy

**BY AMY DICKINSON**

askamy@tribpub.com

EXHIBIT "A"

# Marital mess leads to breaking laws

**Dear Amy:** I am stuck in a no-win situation. Two years ago I ended my marriage after five years with "John" when I met my (now) partner "Jane," who is a police officer. The last two years have been a roller coaster, as John and Jane do not like each other.

John stayed an involved father, making sure our sons were taken care of and visiting them whenever he could. Meanwhile, Jane was trying to prove that she could take John's place and provide all the same love, care and material possessions that John could, while also rubbing John's nose in it whenever possible.

Six months ago, I was awarded sole custody of my two sons when I was injured in an accident and Jane filed a police report saying that John came to our home while drunk and beat me up (this didn't actually happen).

Jane's relative represented me in family court and very quickly filed the motion through the court, barring any contact between my sons and their dad on the grounds of domestic violence and alcoholism.

I feel very sorry and guilty for everything that Jane has put John through, but I am afraid that if I show any remorse for John, Jane will take that as a personal attack.

How can I show Jane that she does not need to continue trying to prove to me that she can replace John?

— *Stuck*

**Dear Stuck:** You are not stuck. If your account of events is accurate, you have made a series of choices to be in a relationship with someone who (according to you) has abused her position in law enforcement and — along with your lawyer (and you) — committed fraud. Your young sons are pawns in this illegal, unethical and very dangerous game.

Your efforts at this point should be pointed toward exiting safely from this relationship. Your ex-husband's parental rights should be restored, and you should make things right.

"Jane" is dangerous and should not be trusted to serve in any capacity where she has the ability to use the justice system to punish people and further her own personal goals. She and her relative should take their own journey through the courts — as defendants.

EXHIBIT "B"



EXHIBIT # "C"

# ILLINOIS DEPARTMENT OF
# ▌Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

October 7, 2014

### HOUSING DISCRIMINATION COMPLAINT

CASE NUMBER: IDHR 2015CH0732, HUD 05-14-1549-8

1.   **Complainants**

James Garner
PO BOX 368371
Chicago, IL  60636

2.   **Other Aggrieved Persons**

Tina Turner
Complainant's wife
PO Box 368371
Chicago, IL  60636

James Edward Socrates Garner
Complainant's son, age 13
PO Box 368371
Chicago, IL  60636

James Amistad Moses Garner
Complainant's son, age 14
PO Box 368371
Chicgao, IL  60636

Kim Violet Garner
Complaiant's daughter, age 3
PO Box 368371
Chicago, IL  60636

3.   **The following is alleged to have occurred or is about to occur:**

Discriminatory refusal to sell.
Discriminatory terms, conditions, privileges, or services and facilities.
Discriminatory acts under Section 818 (coercion, Etc.).

4.   **The alleged violation occurred because of:**

Race/black (African American).

It is alleged that the respondent coerced, intimidated, threatened or interfered
with a person in the exercise or enjoyment of fair housing rights or assisting
another in enjoying such rights.

5.   **Address and location of the property in question (or if no property is involved,
the city and state where the discrimination occurred):**

5114 S Damen
Chicago, IL  60609

100 West Randolph Street, Suite 10-100, Chicago, IL 60601, (312) 814-6200, TTY (866) 740-3953, Housing Line (800) 662-3942
222 South College Street, Room 101, Springfield, IL 62704, (217) 785-5100
2309 West Main Street, Marion, IL 62959 (618) 993-7463
www.illinois.gov/dhr

Charge Number: IDHR 2015CH0732, HUD 05-14-1549-8
Page 2

6.     **Respondent(s)**

Respondent #1:     Allen Kirchner
                   Rosestone Investments, LLC
                   2911 N. Cicero Avenue
                   Chicago, IL  60641

Respondent #2:     Rosestone Investments, LLC
                   2911 N. Cicero Avenue
                   Chicago, IL  60641

Respondent #3:     Phillip Cocomise
                   PC Development, Inc.
                   717 Roppolo Drive
                   Elk Grove Village, IL  60007

Respondent #4:     PC Development, Inc.
                   717 Roppold Drive
                   Elk Grove Village, IL  60007

Respondent #5:     Ira Nevel
                   175 N. Franklin
                   Suite 201
                   Chicago, IL 60606

7.     **The following is a brief and concise statement of the facts regarding the alleged violation:**

Complainant was the previous owner of said property in question.  The property was purchased by a white owner in a judicial sale.  On June 6, 2014, Complainant and Mr. Cocomise, the lender, met to discuss ways for Complainant to re-purchase the property from Mr. Kirchner.  He states Mr. Cocomise told him that it would be in the best interest for him to meet privately with Mr. Kirchner to facilitate the sale of the property at a reasonable price.  Mr. Kirchner refused to sell to Complainant.

On June 10, 2014, Complainant was informed by Mr. Cocomise that he refused to lend any additional monies to Complainant to re-purchase the property after he met with Mr. Kirchner; Despite Mr. Cocomise setting up "Cocomise 2013 Trust" to hold subject property deed as collateral for Mr. Cocomise's loan agreement to provide loan money to Complainant to acquire subject property, after lying to the IDHR to resolve a previous housing discrimination complaint.

Complainant received telephone call from Mr. Kirchner on June 11, 2014.  Mr. Kirchner threatened to put Complainant and his family on the streets.  "I want my money or I'm going to take you, your library, and everything you got and I'm going to throw it into the street.  I'm going to do it personally because you are starting to aggravate me!  I got your other motion and it's a bullshit motion."  He alleged on June 11, 2014. Mr. Kirchner threatened to sabotage his complaint he filed in federal court if he did not pay him $37,000.

Mr. Kirchner told Complainant to burn subject property, because he had insurance on subject property, he indicated that he wanted the $37,000, and he ordered Complainant to stop Complainant's lawyers from appealing the fraudulent litigation created by Mr. Nevel to manufacture the aforementioned judicial sale.

Complainant states Mr. Kirchner threatened to make one call to Mr. Nevel, Mr. Nevel would dismiss current fraudulent litigation, and Mr. Nevel would file more serious fraudulent litigation against Complainant.  Mr. Kirchner also threatened to lie to cover-up his threats against Complainant, if Complainant reported threats in Court and he also vowed to crush lawyers hired by Complainant.

Charge Number: IDHR 2015CH0732, HUD 05-14-1549-8
Page 3

Complainant discovered that Mr. Kirchner lowered the price to Mr. Cocomise to
purchase the property to $25,000. Complainant states Mr. Kirchner set different
terms and conditions in the purchase of the property by demanding him to pay
$37,000; but he offered to sell the property to Mr. Cocomise for $25,000.

Complainant states Mr. Kirchner said $12,000 of the $37,000 was going to Mr. Nevel;
Complainant believes $12,000 was Mr. Nevel's cut from the conspiracy to either
over-charge Complainant or refuse to sell to the Complainant.
+
Complainant believes the owner, his lawyer, and lender conspired to deny him an
opportunity to re-purchase his building and subjected to different terms and
conditions because of his race, black.

8.    **The most recent date on which the alleged discrimination occurred:**

June 11, 2014, and is continuing.

9.    **Types of Federal Funds identified:**

None.

10.   **The acts alleged in this complaint, if proven, may constitute a violation of the
following:**

Sections 804a, 804b and 818 of Title VIII of the Civil Rights Act of 1968 as
amended by the Fair Housing Act of 1988 and Sections 3-102(A), 3-102(B) and 3-105.1
of the Illinois Human Rights Act.

**Please sign and date this form:**

**Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil
Procedure [735 ILCS 5/1-109], the undersigned certifies that the statements set forth in
this instrument are true and correct, except as to matters therein stated to be on
information and belief and as to such matters the undersigned certifies as aforesaid that
he or she verily believes the same to be true.**

James Garner                                    OCTOBER 19, 2014
                                                (Date)

**NOTE: IDHR WILL FURNISH A COPY OF THIS COMPLAINT TO THE PERSON OR ORGANIZATION AGAINST
WHOM IT IS FILED.**

100 West Randolph Street, J.R. Thompson Center, Suite 10-100, Chicago, Illinois 60601, 312-814-6200, 312-263-1579 (TDD),
312-814-6251 (FAX), Housing Line, 1-800-662-3942
222 South College Street, Room 101, Springfield, Illinois 62704, 217-785-5100, 217-785-5125 (TDD)
2309 West Main Street, Suite 112, Marion, Illinois 62959, 618-993-7463



ILLINOIS DEPARTMENT OF

# Human Rights

Pat Quinn, Governor
Rocco J. Claps, Director

October 7, 2014

James Garner
PO BOX 368371
Chicago, IL 60636

Re:    Charge No. IDHR 2015CH0732, HUD 05-14-1549-8
       Respondent: Allen Kirchner; Rosestone Investments, LLC; Phillip Cocomise; PC
       Development, Inc; and Ira Nevel

Dear Complainant:

You have filed the enclosed housing discrimination charge with the Illinois Department of Human
Rights ("the Department") in accordance with the Human Rights Act, and we have assigned it the
charge number indicated above. A copy of the charge has been served on the Respondent. **KEEP
THIS LETTER AND HAVE IT WITH YOU IF YOU NEED TO TELEPHONE OR COME
TO THE DEPARTMENT.** It is your responsibility to cooperate with the Department's
investigation and provide all pertinent information concerning the case by the dates requested.

Please be advised that we make every effort to conduct our investigations in a neutral and fair
manner. If you have any concerns in this regard, please contact Marian Honel, Manager, Fair
Housing Division, at (312) 814-6219. If the charge is dismissed, you have the right to file an
appeal as explained in the attached Procedures for Housing Cases. Please make sure you notify us
if you move or change your address or telephone number.

**If you have any questions or concerns about the charge, or if we have not yet discussed the
charge, please contact me immediately.**

Your cooperation is appreciated.

Sincerely,

Paul Galbraith

Paul Galbraith
Investigator III
Fair Housing Division
(312) 814-1988
Paul.Galbraith@illinois.gov
Enclosures: Charge

*EXHIBIT*
*# "D"*

TRANSCRIPT: Meeting At McDonald's 1900 N. Western on 5-31-14

J.G. Arrive at 12:30p.m to meet Rosestone Investments,LLC boss Mr. Allan Kirchner:

1.  Al: "You're a formidable opponent but you picked the wrong guy"; "My name is Allan." "I'm going to turn off my phone, you turn off yours." "This conversation is not being recorded....Is that correct?"

2.  JG: "?"

3.  Al: "I respect you and I respect your position." "?" "Well, you've been having a lot of fun, if you wanna call it fun."

4.  JG: "It wasn't fun."

5.  Al: "I didn't think so." "I know you, but I'm not going to tell you where I know you from, because you should know.........but you don't"

6.  JG: ["Where?"]

7.  Al: [laughter] "Nothing good, nothing bad....." "So, what do you want to do?"

8.  JG: "I want to make a deal."

9.  Al: "Give me a number."

10. JG: "I want to pay $25."

11. Al: "You paid $24 for it back in 1989." "You've had numerous tax cases." "A guy named Cocomise...a guy you used to work with....you've got some integrity issues with him or him with you." "You got into a battle with a guy named

TRANSCRIPT: Meeting At McDonald's 1900 N. Western on 5-31-14

Steven Duckett....years back....I see his name in there". "You also got into a battle with another one of my friends.....Mr. Gilbert Balin....okay....I see that too." "25 is not enough.....I'm not going to hold you up.........my attorney fees are enormous.....that you created......you're going to have to change your number and get back to me in a couple days." "I know you're not staying there(subject property/5114 S Damen)....you're trying to give the appearance that you are staying there." "I thought it was real funny, I have to give you some credit for....I get a letter from my attorney, he says he's(JG) got some lady staying there named Tina Turner:" "I said really, you tell him......who is the husband of Tina Turner?.......

12.    JG:    "Ike".

13.    Al:    "Ike is going to slap her ass into the street!" "Aint no Tina Turner living there." "My attorney started laughing." "I'm a son of God.......Jesus Christ is my savior.......and I'm friggin tired of bricks on 51st and Damen!" "You sucked up my time....you sucked up my money.....you sucked up my resources!" "All in the name of something that somebody did 150-years ago in the Civil War.......that was ridiculous!" "Let me tell you something, Abraham Lincoln was my....[12th?]...cousin." "It's documented." "I didn't appreciate the comments made about black reparations and all that bull-crap!" It aint your fault and my fault about what happened 150 years ago." "That was all dumb stuff...."

14.    JG:    "That's true."

15.    Al:    "You know.....give me a break.......I'm Abraham Lincoln's cousin

TRANSCRIPT: Meeting At McDonald's 1900 N. Western on 5-31-14

brother!" "Alright".

16.     JG:    "I didn't know that...."

17.     Al:    "and I didn't know what you were thinking either.....but let me tell

you something." "That poor man.....that blessed man......sat at that table......with

parents.....with one side believed in slavery wearing grey uniforms,...somebody had to sit

there with sons on each side of the civil war....and Abraham Lincoln had to sit there  and

pray, while their sons were outside shooting at each other." "You have the right to tell

me that we owe you something........do you know what they say in Spanish?....[...?...]...do

you know what that means in Spanish?" "It means you must have a fart in your

skull.....to think that!" "So, I come from good blood.....my Christ Jesus.......I was runnin,

gunnin, drinking, screwing, brewing, barbequeing, and sinning my life away." "I heard

your father was a big tax buyer at one time, was he not?"

18.     JG:    "....after he died.....I became the Executor.....then me and Mr. Bailen

got off on the wrong foot....."

19.     Al:    "Didn't your father own the vacant lot at 5116 S. Damen?"

20.     JG:    "I not sure."

21.     Al:    "I think he did." "I remember the upstairs(subject property)......it

was used for rooms....left right left right....it was a mixed use building." "You know it's

4 and a half years taxes or about $20,000 owed on the building." "My attorney cost me

$12,000......I rather take the building.....because I would just gut it out........I can do it for

$20,000 per unit.......I will tuck point it....sandblast it....I'll rent it out........do you want to

TRANSCRIPT: Meeting At McDonald's 1900 N. Western on 5-31-14

rent an apartment from me?.......you have a place to go, do you not?"

    22.    JG:    "I'll have to find a place to go."

    23.    Al:    "Who changed the tax address to Josette?" "If any body tampers with it, I will prosecute." "Now, here is what I want to tell you." "You come up with a number so I don't have to waste anymore time with the building."

    24.    JG:    "$25,000..."

    25.    Al:    "It's not going to be $25,000........not going to be $25,000."

    26.    JG:    "Whats the number that makes you happy?"

    27.    Al:    "None of this makes me happy!" "I shouldn't be here and you shouldn't be here." "None of this makes me happy." You give me a better number than that and I'll shake your hand....you can pick up the deed in my office next week.....we'll dismiss the case". "You have to do better than $25,000." "I've got to pay my attorney(Mr. Ira Nevel), who you terrorized and he was busy moving, by the way......." "You're lucky that Judge didn't throw your ass in the cooler man......"

    28.    JG:    "Which Judge?"

    29.    Al:    "...................................[unknown].........." "An attorney says you're famous(case)....you're part of our continuing education.........it was funny." "Anyways, uh, the only one left over there(subject property) is you and I think you go over there once and a while....." "I drive by.....I see you installed a camera out there to intimidate or

TRANSCRIPT: Meeting At McDonald's 1900 N. Western on 5-31-14

watch your property.."

30.    JG:    "You said you knew me in 1999...."

31.    Al:    "I like that you're thinking......you're thinking so hard.....I can see smoke is coming out of your ears." "That was about the spring of 1999 or so."

32.    JG:    "Did you work for [Gilbert] Balin's office?"

33.    Al:    "No." "But I'll tell you what happened." "You owe somebody an apology that you didn't know". "To me its just business." "Do you believe in Jesus Christ?"

34.    JG:    "I believe in God."

35.    Al:    "What happened was.......Balin had got your deed, he gave me the original, that was recorded and handed it back to me." "He told me to go over there(to subject property) and see if there was anybody in there.........you have the right to go in there and secure the property, if nobody is there." "We met you upstairs....you walked out of a back room." "I was with a pastor.....a man of God, who you dragged court......made a complaint(police report) and he had to go to court three times to clear his name." "You didn't know that." "We even offered you a place to stay....money.....food." Remember, the next tall pastor....that was me......"

36.    JG:    "I remember......."

37.    Al:    "His name is pastor Revis..........Chicago Victory Church". "That is when I met him in 1998.....he introduced me to Jesus...."

TRANSCRIPT: Meeting At McDonald's 1900 N. Western on 5-31-14

38.    JG:    "You were the guy who said, when the old gavel falls...thats it...."

39.    Al:    "It already did.......heres the thing......it was just a matter of possession at that time." "You know the game...............how many clients you got?"

40.    JG:    "I'm not a lawyer!"

41.    Al:    "I know you're not........lets just say that you're good at pro se...." "He(Revis) had to go to Court three times to clear his name, because you called it breaking and entering." "So, we got a summons at the church.....a man of God....who did nothing wrong, because we were going to open up a church there(subject property)." ".....you don't remember that....we came in peace and you terrorized us with the police." "So you know what, its a long battle my brother and the battle has started again!" ".....we got some notes(mortages) for you, heres one at 5114 S. Damen and I said, James Garner's storefront.......he's got an apartment upstairs......I met him!" "So, it(subject property) came back to me twice." "So, you know what I say, Mr. Garner.....I say we both got a lesson......you mess with Abraham Lincoln......" "I've got to tell you a funny story......it was back in the 80's....remember when we had telephone booths....the guy was a genius.....you follow me." "You're a genius!" "You know what the phone company did with him?"

42.    JG:    "What did they do?"

43.    AL:    "They hired him." "I was telling someone a joke the other day, I was telling the same story.......you see these hackers..........this guy Garner's pretty good......but in the end Jesus will always be right......thats why I won!" "It's over."

"....you can manipulate Judges...you can manipulate me....but you can't manipulate God........cause I'm right." "It's not a matter of winning or losing........$25,000 is not enough.....because you cost the money not me." "The other thing is, I want to send my crew to clean the place out....I don't care." "Heres the thing.....come up with a good number......."

44.    JG:    "What is your number?"

45.    AL:    "I don't want to pay any taxes.....the taxes are all yours......I wiped out all the water liens for you.......I did you a favor." "I don't think the waters on in there(subject property)....its off at the meter." "I'm thinking like $37,000.........that covers everything....it lets me make a dollar.....I'm going to donate 10-percent to pastor Revis" "he's taken a lot of people off of the street....he feeds um, clothes um....gives um a place to sleep and takes care of them."

46.    JG:    "That is a beautiful thing."

47.    AL:    "When I was out there screwing, brewing, barbequing, and drinking........I had a home, a car, money in the bank, but I just couldn't quit....it took Jesus to help me do it...........I met him in 1998(Revis)....I stayed with him for 9-months." "......I walked into church and gave my life to Christ." "......it was easy for me to make money in real estate......I'd make $20,000 fee and spend it all on drugs...." "....Revis said can you help me buy this church.....I said sure....he said can you help me buy a church in California.....I said sure.....he said can you do this in Jacksonville....so God was using

me...like a pawn on a chess board." "My wife is Puerto Rican." "I grew up in a hispanic

and black neighborhood............" "....if you put a Church in a 501-3-c, you can wipe out

3-years of taxes..." "I'll take $37,000, give you the deed, and you go record it.....that it."

48.    JG:    "I don't have $37,000 cash..."

49.    Al:    "You got another building.....let's trade......there is a million ways

to do this....."

50.    JG:    "What a down-payment, payments, and a purchase money

mortgage, until my lawsuit settles and then I can pay you off......"

51.    Al:    "I don't think I'll do that....." "Let me tell you something,

attorneys have to make money.........after they take your money, they don't care about

you." "I gotta tell you something that I didn't do because.......I don't know if you're

aware of this.....I gotta tell you something."  "I wanted to see how long this would play

out and I knew you would be calling me one day......but I got to tell you something." "I

was going to have this case(foreclosure) dismissed and I was going to hit you with

mortgage fraud." "I would have fucking blown you out of the water pal!" "You would

have been blown out of the water.......that was a fraudulent mortgage." "It was a retail

unit....the appraiser in that deal......okay." "It's mortgage fraud.......I could have blown

this whole thing up....with one change....."

52.    JG:    "I agree with you.....it was mortgage fraud." "The reason I took the

mortgage......was because I had to pay Mr. Cocomise $100,000....I signed everything they

told me to sign....."

53.  Al:  "You try telling that to the Judge." ".......one phone call to

Nevel.....tell him to stop it.......then you would have got in trouble." "You signed the

papers.....because that was a residential mortgage on a mixed use building." "i don't want

to cross up anybody else......with what I'm doing here with you.....if you want to get a

hard money loan.....I'll give you a payoff letter.....I just want my money.....we got the

deed in a trust.....just give me the money.....I"ll sign the trust over to you." "Either you

you want it....I will work with you.....but it's got to be soon."

54.  JG:  "I'm ready to do something this week....."

55.  Al:  "A couple thousand dollars down......I can't do that....."

56.  JG:  "I can come up with $5,000 down....."

57.  Al:  "Its no way I can do it......."

58.  JG:  "I could pay you off in a year or 18-months....."

59.  Al:  "No...........I'm not going to have another possession fight with

you." "I can't.............I gotta get cashed out." "'.....I been in worst positions.....right now

its you not me.....its you.....I believe in the power of Jesus Christ.....right now I've got to

run." "So, in the name of Jesus....I'm going to pray that you find a solution.....Oh lord,

bless him with some funding lord.......he can change his heart...and turn his heart toward

you.....Amen....I've got to go......you can call me......I don't want to spend a lot of time on

TRANSCRIPT: Meeting At McDonald's 1900 N. Western on 5-31-14

this.......I got to get in there(subject property).......I gotta start working." "Maybe you've

got another property.......I buy situations!" "Maybe you something else I can buy and

make some money on......we can even up that way........I don't want an empty lot.....

    60.    JG:   "So you're saying if I've got another piece of property like a

house....."

    61.    Al:   "....Trade with me.....I'll trade you deeds." "I don't want

something falling down and the city got a demo order on it..." "Maybe we'll do this....at

least half the money down....$18,500 and give me some other collateral for the other

$18,500." "Put your brain to work on that....."

    62.    JG:   "....a house at 6522 S. Winchester..."

    63.    Al:   "It's very possible.....is it occupied.......is it really tore up?" "Can I

turn my phone on and put the address in?" "How many years taxes on it?" "....I don't

want a back-lot.....forget that....what else you got?"

    64.    JG:   "Thats about it...."

    65.    Al:   "Those don't sell.....I buy those for $12,000." "Nobody likes back

lots....those don't have any curb appeal...........especially in bad neighborhoods." "65th

and Winchester is a death trap!" "I got one at 67th and Marshfield.....I got some cheap

properties.....thats the last business I'm doing on the southside.....there is nothing

happening....nothing going on.....but horror and bad things......I just pray for those

neighborhoods and neighbors to step forward and bring God upon them." "There messing-up there lives and killing each other....down there......you know that!" [?"You're to be standing where you live at."] "You think about.....I've got to get to an appointment..." "....another building thats acceptable and we'll work it out." "...I'll just drive by and see the front and back.....I don't have to go in and I will say yes or no." "I'll look at 6522 S Winchester.....although, I know I won't like.......especially if its been bad shape and been vacant a long time." "Maybe, I'll do a valuation on what the building is worth to me."

66.    JG:    "........I don't want to be back in that courtroom."

67.    Al:    "No......you're worn out dude."

68.    JG:    "I am worn out......I've got bad feet....high blood pressure....heart trouble......"

69.    Al:    "You don't smoke or drink....do you?"

70.    JG:    "No." "The lawyer says we can do this and that.......keeping the case going...." "I'd rather just pay Al."

71.    Al:    "He's(the lawyer) just bleeding you...." "You're making a deal with me!" "Don't worry about it." "Lets get to work."

72.    Al:    "I have one more thing for you and I want you to think about it." "I've got a girl who owes a big mortgage on a house.....and there is an open case on it.....I might have a way for you top make more money....but this time you would be on the

TRANSCRIPT:  Meeting At McDonald's 1900 N. Western on 5-31-14

other side......you can file a motion electronically and never go to court....Wells

Fargo......these people have bad book keeping and I know I can delete the mortgage.....that

would be worth money to me.....

    73.    JG:    "Okay....ok....if we do the deal on the building(subject property)."

    74.    Al:    [?"Bye"] [AL LEFT MC D'S.....MEETING DONE]

*Law Offices of Ira T. Nevel, LLC*

175 N. FRANKLIN STREET
SUITE 201
CHICAGO, ILLINOIS 60606
TELEPHONE (312) 357-1125
FAX (312) 357-1140
iranevel@nevellaw.com

December 9, 2014

Mr. James Garner and Ms. Tina Turner          Mr. James Garner and Ms. Tina Turner
P.O. Box 368371                               5114 South Damen Avenue
Chicago, IL 60636                             Chicago, IL 60609

   Re: Rosestone vs. Tina Turner, et al
     13 M1 724672

Dear Mr. Garner and Ms. Turner,

  As you know, I represent the Plaintiff, Rosestone Investments, LLC, who now owns the subject property at 5114 S. Damen, Chicago, IL 60609. Your possession of the subject property has recently been terminated by the Sheriff of Cook County on November 10, 2014 pursuant to Orders of Possession. You have failed to contact me about removal of the personal property left there, even though the Sheriff has directed you to do so on November 10, 2014.

  This letter is to inform you that on December 20, 2014 at 9:00 a.m., the Plaintiff will be removing all personal property from the house and placing it either into a dumpster or on the curb. You will be permitted to appear on that date and time to take possession of the personal property from outside the house as it is removed. You will not be permitted into the house under any circumstances.

  I strongly suggest that you consult with one of your attorneys about this matter. Rosestone is allowing this reasonable opportunity for you to remove your personal property. This will be your one and only opportunity to remove property from the house. If you fail to appear to remove items you want, you will have waived your right to do so and it will be discarded.

  Please contact the undersigned with any questions you may have.

            Ira T. Nevel

cc: Starr Beijgert Zink & Rowells
  35 E. Wacker Drive, Suite 1870
  Chicago, IL 60601

  BusinessConsult1@yahoo.com
  Chicago@IC.FBI.gov

EXHIBIT # "F"

FILED

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, COUNTY DIVISION 99 MAY 19 PM 4: 29

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION OF | ) | CIRCUIT COURT OF COOK |
| THE COUNTY COLLECTOR FOR | ) | COUNTY ILLINOIS |
| JUDGMENT AND SALE AGAINST LANDS AND | ) | COUNTY DIVISION |
| LOTS UPON WHICH ALL OR A PART OF THE | ) | CASE NO. 97 COTDS 0821 |
| GENERAL TAXES FOR TWO OR MORE YEARS | ) | |
| ARE DELINQUENT PURSUANT TO SECTION | ) | CERT NO. 97S-0004479 |
| 21-260 OF THE PROPERTY TAX CODE, | ) | |
| AS AMENDED | ) | |

### AMENDED MOTION FOR THE IMPOSITION OF SANCTIONS
### UNDER SUPREME COURT RULE 137

JAMES GARNER, individually and doing business as JOSETTE REAL ESTATE

COMPANY, by and through his attorneys, Chuhak & Tecson, P.C., moves this Court to enter an

award of sanctions pursuant to Supreme Court Rule 137 and for other relief; in support of which,

Movant states as follows:

1.     Your Movant, JAMES GARNER, originally came into title of the subject

property on or about October 18, 1988 by a warranty deed which was thereafter recorded on or

about May 5, 1989 in the Office of the Cook County Recorder of Deeds.  JAMES GARNER has

continuously held record title ownership in the said property from that date.

2.     On or about December 17, 1998, this Court entered an Order directing the Cook

County Clerk to issue a tax deed in favor of Petitioner CAPITAL TAX CORPORATION,

thereby removing JAMES GARNER from the status of record title holder.  A copy of the Order

of this Court of December 17, 1998 accompanies this Motion as **Exhibit 1**.

3.     An essential basis supporting this Court's decision to direct the County Clerk to

issue a tax deed in favor of tax purchaser CAPITAL TAX CORPORATION was the

representation to this Court by that entity, through its attorney, TIMOTHY BALIN, and through

the entity's property inspector, GILBERT BALIN, that the subject premises was commercial in nature, and therefore subject to the shorter redemption period of six (6) months (pursuant to 35 ILCS 200/21-350(a)), rather than residential[1], which would allow the owner the longer period of 2½ years, or thirty (30) months within which to redeem the property from the tax sale. 35 ILCS 200/21-350(b) (1998).

4. The December 17, 1998 Order was entered pursuant to a verified Petition for Tax Deed filed with this Court December 2, 1997, a copy of which accompanies this Motion as **Exhibit 2**. Within the said Petition for Tax Deed it is recited that as of the date of filing, the property had not been redeemed from the tax sale, and it further provided that the time for redemption of the property "will expire by extension on April 15, 1998." *See* ¶3 of Petition for Tax Deed, Exhibit 2.

5. The redemption period applied by CAPITAL TAX CORPORATION of six (6) months[2] was that pertaining to property governed by §21-350(a), or "property containing an improvement consisting of a structure or structures with 7 or more residential units or that is commercial or industrial property, . . . ." 35 ILCS 200/21-350(a) (1998).

6. Upon the expiration of the stated lesser redemption period on April 15, 1998, and as no redemption of the taxes had occurred, Petitioner CAPITAL TAX CORPORATION filed its Application for an Order Directing the County Clerk to Issue a Tax Deed (hereinafter,

---

[1] Or, as the statute states, if the property, on the date of sale, "was improved with a structure consisting of at least one and not more than 6 dwelling units it may be redeemed at any time on or before the expiration of 2 years and 6 months from the date of sale." 35 ILCS 200/21-350.

[2] As extended by the tax purchaser from February, 1998 to April 15, 1998. *See* Petition for Tax Deed, **Exhibit 2** hereto, at ¶3, p. 1.

2

"Application") on April 21, 1998. A copy of the said Application is attached as **Exhibit 3**. The

said Application was signed by attorney TIMOTHY BALIN, of BALIN, SMITH AND

ASSOCIATES, LTD., the law firm representing CAPITAL TAX CORPORATION. The

Application for an Order provides, in part, as follows:

> 2. *The time for redemption for said sale has expired,* and the following described real estate, which is also described in said Petition, has not been redeemed from said sale:

*See* page 1 of **Exhibit 3**. (Emphasis added.)

7. The supporting Affidavit of TIMOTHY BALIN, as attorney for Petitioner

CAPITAL TAX CORPORATION, is attached to the Application at its end. Within the

Affidavit, it is similarly recited that, "[t]he time of redemption, as extended, from tax sale

expired April 15, 1998." *See* ¶2 of Affidavit, at **Exhibit 3**.

8. The Petitioner, CAPITAL TAX CORPORATION, thereafter brought testimony in

support of its Application, which was heard by this Court on June 30, 1998. A full and complete

copy of the transcript from the June 30, 1998 hearing accompanies this Motionn as **Exhibit 4**.

9. At the top of page 4 of the **Exhibit 4**, CAPITAL TAX CORPORATION, through

its attorney, TIMOTHY BALIN, expressly advised the Court as follows:

> Your Honor, the extended period of redemption for this sale was April 15, 1998. At this time I am presenting the original stamped by the Cook County Clerk showing the extension to that date and ask to withdraw the original bearing the green stamp and present a photocopy at this time.

**Exhibit 4**, p. 4, lines 1 - 6. At that time, a witness was sworn in to testify in support of the

Application, GILBERT BALIN, who was introduced to the Court as the Inspector of tax

purchaser CAPITAL TAX CORPORATION to give testimony, *inter alia*, relative to the zoning

character of the premises. GILBERT BALIN, on information and belief, is or was, at the time of

the hearing, a principal of the petitioner, CAPITAL TAX CORPORATION.

10. GILBERT BALIN's testimony was as follows:

Q. Can you please state your name for the record?

A. Gilbert Balin.

Q. Mr. Balin, is your capacity with Capital Tax Corporation one of an inspector?

A. Yes.

Q. And do you personally inspect property for them prior to and subsequent to scavenger tax sales?

A. Yes.

Q. Do you also check judgment books to observe if there has been a redemption made?

A. Yes.

Q. And has there been a redemption made to this PIN number?

A. Not to my knowledge.

      *         *         *         *         *

Q. Mr. Balin, did you, in fact, physically [inspect] this property?

A. Yes.

Q. What is the common street address of the property?

A. 5114 - 5116 South Damen.

Q. And what is the property improved with?

A. It's a store and an apartment.

Q. And approximately what was the date of your physical inspection?

4

A.  It was around December 18, 1997.

Q.  Was that your inspection during the notice-serving period?

A.  Yes.

Q.  And did you also inspect the property prior to and subsequent to that date?

A.  Yes, several times.

Q.  And is the property occupied?

A.  As far as I could tell, it's vacant. I keep leaving cards in the door and notes.

   I happen to know the owner of the property and I can't get in touch with him. I've asked around and the people said they haven't seen him in quite some time.

Q.  What was the name of the owner?

A.  Mr. Garner.

Q.  James Garner?

A.  Yes.

Q.  And when you visited the property after you left a note and cards, were the note and cards still there?

A.  Sometimes they were and sometimes they weren't because I have to stick them on the outside of the door and there's a lot of people always hanging around in that neighborhood, so I can't tell who is taking them.

Q.  It's a corner building?

A.  It's right off the alley.

*See* **Exhibit 4**, pp. 4 - 7.

11.  As a result of this Court's consideration of Petitioner's Application for an Order

Directing the County Clerk to Issue a Tax Deed, as well as on the basis of the testimony of

GILBERT BALIN proffered in support, the aforementioned Order of December 17, 1998 was entered, directing the County Clerk to issue a tax deed to petitioner CAPITAL TAX CORPORATION.

12.     As stated, a material and essential element in this Court's consideration of the facts in determining whether to direct the County Clerk to issue a Tax Deed in favor of CAPITAL TAX CORPORATION, was the nature of the property as falling under §21-350(a), i.e., as commercial property, which abides by the shorter redemption period of six (6) months, rather than the longer period applicable to property fitting within §21-350(b), or property improved with a structure consisting of at least one and not more than 6 dwelling units, which has a redemption expiration period of 2½ years from date of sale.

The Harm to the Movant:

13.     On March 8, 1999, Movant JAMES GARNER appeared before this Court upon an Emergency Petition to Vacate Order Directing County Clerk to Issue Tax Deed, Pursuant to Illinois Code of Civil Procedure Section 5/2-1401. Movant then and there represented to this Court, pursuant to his attached Affidavit in support, that during the immediately prior week, it was brought to his attention that petitioner CAPITAL TAX CORPORATION had come into title of the subject premises, and that he no longer stood as the record title holder. This was brought to his attention by the physical appearance at the subject premises on March 3, 1999 of four individuals purporting to have been sent by the office of O.P. REAL ESTATE, Inc., which has its office at 100 N. LaSalle Street, Suite 1111, Chicago, Illinois. On information and belief, GILBERT BALIN is a principal of O.P. REAL ESTATE, Inc. At that time, as Movant's Affidavit recites, the four individuals broke the front door lock to the premises and attempted to

6

gain entrance to the premises. A discussion ensued, and based upon the information obtained by GARNER at that time relative to this proceeding having been initiated by CAPITAL TAX CORPORATION, GARNER inspected the instant court file and then filed his Emergency Petition under §2-1401 of the Code of Civil Procedure.

14. The Emergency Petition was rooted in two (2) arguments:

(a) Despite the assertions of fact recited in the Affidavit of TIMOTHY BALIN in support of the Application for an Order Directing Issuance of Tax Deed, relative to appropriate statutory notice having been served upon JAMES GARNER, in fact actual notice was not given to JAMES GARNER of the pendency of this proceeding, and furthermore diligent efforts were not made to accomplish service upon him as required by statute; and

(b) That the entire proceeding initiated by CAPITAL TAX CORPORATION to obtain a tax deed for the property was based upon an inaccurate characterization of the instant property as commerical property, subject to a 6 month redemption period, when in fact the property was residential, and therefore subject to the longer, 30 month period.

15. On May 5, 1999, this Court entered an Order upon the said Emergency Petition to Vacate Under Section 2-1401, without objection from petitioner CAPITAL TAX CORPORATION, which vacated its earlier December 17, 1998 Order Directing County Clerk to Issue Tax Deed, and which further directed the Cook County Clerk and Cook County Collector to mark their records and books to reflect the vacation of the December 17, 1998 Order. The May 5, 1999 Order further provided that the redemption date for the 1997 scavenger sale by which CAPITAL TAX CORPORATION became the tax purchaser shall be extended, as requested by GARNER, to February 6, 2000. A copy of this Court's May 5, 1999 Order is attached as **Exhibit 5**.

7

16.     Whether CAPITAL TAX CORPORATION declined to oppose the Petition to Vacate Order Under Section 2-1401 on account of one or both of the bases asserted by GARNER in his Petition, or neither, makes no difference. Your Movant, by entry of its May 5, 1999 Order, has at least been returned to the status of record title-holder of the subject premises. What has not been returned to Movant is his out-of-pocket expenses in attorneys' fees and costs, not to mention his lost time, all of which were necessarily incurred to return the title to that status quo.

17.     Movant believes that the entire proceeding, beginning with the Petition for Tax Deed and the later Application for an Order Directing County Clerk to Issue Tax Deed, was improperly filed and violated Illinois Supreme Court Rule 137 in that, not only was there no reasonable inquiry into the facts before these matters were filed, but that for the reasons hereinafter stated, CAPITAL TAX CORPORATION and its counsel knew or should have known that the subject property was previously *adjudicated* by Judge Michael Murphy of this division of the Circuit Court of Cook County, to be residential, and not commercial, for purposes of the applicable redemption period.

18.     As stated, your Movant JAMES GARNER has been the record title holder of the subject premises since as long ago as May, 1989.

19.     On or about October 22, 1991, a previous corporation for which GILBERT BALIN served as Inspector, and, on information and belief, of which GILBERT BALIN was a principal, purchased the taxes for this property for the years 1988 and 1989. That corporation was GALAXY PROPERTIES, INC. (hereinafter "GALAXY"), an Illinois corporation.

20.     Thereafter, a Petition for Deed was filed with this Court on the part of GALAXY, which provided that Certificate of Purchase #91S-0003727 was issued and delivered to GALAXY's assignor, which then assigned the same to GALAXY. (*See* Petition for Deed, Case

8

No. 92 CoTDS 1153, Certificate No. 91S-0003727, PIN #20-02-303-032-0000, Vol. 417, attached hereto as **Exhibit 6**.)

21.     The Petition for [tax] Deed further provided that there had been no redemption of the taxes to the date of filing, and that the redemption period would expire if no redemption were made by the "extended date" of March 5, 1993.[3]

22.     A redemption of the outstanding taxes was thereafter made. However, a dispute arose over the general issue of whether the subject property was residential or commercial in nature, and, depending on the court's determination, whether a mortgage holder on behalf of GARNER as record title holder, rather than GARNER himself, could validly redeem the taxes.

23.     On or about March 26, 1993, petitioner GALAXY PROPERTIES, Inc. filed its Motion to Expunge Redemption, whereby GALAXY sought to establish that the redemption of the taxes by a party other than the record title holder was invalid and voidable. A copy of GALAXY's Motion to Expunge Redemption is attached hereto as **Exhibit 7**.

24.     After the matter was fully briefed, a hearing was held before the Honorable Judge Michael Murphy on May 25, 1993. At that hearing, testimony was given by JAMES GARNER in opposition to the Motion to Expunge Redemption, and on behalf of GALAXY testimony was given by GILBERT BALIN -- the same GILBERT BALIN who testified before this Court on June 30, 1998. At that hearing, similar to the hearing held on June 30, 1998, BALIN was called to testify as to the nature of the property, his familiarity with the property as the Inspector for GALAXY PROPERTIES, Inc., and, indeed, BALIN was qualified as an expert witness to render

---

[3]The taxes for the years 1988 and 1989 having been sold on October 22, 1991, even the extended period to and including March 5, 1993 for redemption of the taxes fell far short of the redemption period for residential property applicable at that time, which should have been 2½ years, or an expiration date of April 22, 1994. 35 ILCS 205/253(b)(2) [1992].

opinion testimony as respects the issue of whether the property in question was commercial in character or residential in character. Attached hereto as **Exhibit 8** are relevant portions of the transcript from the May 25, 1993 hearing. BALIN's testimony (at pp. 8 - 41) concluded, from making trips to the property, from taking photographs of the property (which were admitted into evidence at the hearing), and from his experience from 40 years of involvement in real estate matters, the subject property at 5114 - 5116 S. Damen, Chicago, Illinois was commercial.

BALIN testified, in pertinent part:

> Q. Based upon your experience with a visual view of the property indicate [*sic*] it appears to be a single family residence?
>
> A. No.
>
> Q. And why is that?
>
> A. Because it's built as a store and apartment and nobody changed the facade or the outside or anything to make it indicate that it was a single family residence and for all practical purposes, anybody that would see it would think it was a store and a residence.

(*See* **Exhibit 8**, p. 33.)

25. Shortly thereafter, Judge Murphy conducted brief examination of GILBERT BALIN to inquire into the basis of BALIN's contention that the property was commercial and not residential. The Court inquired of BALIN:

> THE COURT: And am I misreading these photographs or is there something you said that's not -- you said it's commercial in nature and I don't see any commercial signs or anything. Why do you say it is commercial?
>
> THE WITNESS: Because it's a store. This is a store on the first floor. This is a store. It is built as a store. This is a store window.
>
> I mean normally if it's a single family residence, you wouldn't have a store window in a separate -- two separate doors.
>
> THE COURT: Okay. That's why you concluded it is?

10

THE WITNESS: Yes. In my experience, Your Honor, all the building I've seen like that are commercial.

(Pp. 36 - 37, **Exhibit 8**.)

26.      Thereafter, following both sides resting and argument having been heard, Judge Murphy ruled that the property must be considered residential in nature and specifically not commercial. In pertinent part, the Court stated in its ruling:

Now, what is it? Is it commercial or is this residential? That's another difficult question. Unfortunately -- fortunately, that's just a question of fact. I view the evidence of both witnesses. I think they are both telling the truth. I don't know what's behind that window throughout the city. We've seen cases like this where they board up the front window and they lived behind there. There's homes like that throughout the city.

One of the more contested cases, I don't think either one of you are involved, involved a property down in Maxwell Street where that occurred, and then there's some property up north the same way, where a store turns into a dwelling unit.

One witness was in the place. He claims to live there with his family. The other witness was never in.

I can't see any signs of commercial use from the outside of the photographs. And I'm interpreting it as it's being used as a single family unit. It is just my interpretation based upon what was there.

\*           \*           \*           \*           \*

But just from the evidence today, I'm viewing that as a single family unit.

\*           \*           \*           \*           \*

MR. O'NEIL: So my understanding [*sic*] the motion to expunge the redemption is denied?

THE COURT: That's the bottom line.

(**Exhibit 8**, pp. 79 - 81.)

27.      Attached as **Exhibit 9** is a copy of the order entered May 25, 1993, by which the Court denied the Motion of GALAXY PROPERTIES, Inc. to Expunge Redemption.

11

Conclusion

28.     Given the undeniable fact that GILBERT BALIN appeared before Judge Murphy

in 1993 in a dispute relating to the specific issue of whether the subject property, at 5114 - 5116

S. Damen Avenue, Chicago, Illinois, was commercial rather than residential; and given the

undeniable fact that GILBERT BALIN was present when Judge Murphy adjudicated the instant

property to be residential in character -- rejecting BALIN's opinion witness testimony that the

property was commercial, in a case involving an attempted tax redemption following a sale of the

taxes to one of BALIN's companies; and given the fact that it was BALIN's testimony which

was presented to this Court on June 30, 1998, wherein BALIN testified, under oath, that he

inspected the property on December 18, 1997 and determined it to be improved with "a store and

an apartment;" that he further inspected the property both prior to and subsequent to that

December 18, 1997 visit, in the full knowledge of Judge Michael Murphy's earlier contrary

adjudication; your Movant submits to this Court as follows:

A.     That it is a fraud upon this Court for BALIN and the Company for which he was

testifying in the *ex parte* hearing to opine as to the commercial character of the property, without

communicating to the Court that a contrary adjudication by the same Circuit Court of Cook

County as to the same property had taken place five years earlier before a different judge;

B.     That BALIN's knowledge of these most salient facts must be imputed to

CAPITAL TAX CORPORATION, the party bringing the action;

C.     That BALIN's knowledge of these most salient facts must be imputed to counsel,

TIMOTHY BALIN, who signed the pleadings;

D.     That Attorney TIMOTHY BALIN, whose recitals in the Application for an Order

Directing County Clerk to Issue Tax Deed, and whose sworn Affidavit in support therefor each

indicate that the expiration of the redemption period for the property was to occur on a date which only would apply to commercial property, governed by Section 200/21-350(a), which he knew or should have known, from a reasonable inquiry into the facts, was inaccurate and likely to result in the wrongful issuance of a tax deed which would work financial harm upon Movant;

    E.    That JAMES GARNER as a result was required to expend substantial sums in attorneys fees, necessary costs and his own time, all incidental to ascertaining the nature of the proceeding and precisely what had taken place in court in 1997 and 1998 relating to his property and correcting it; and

    F.    But for the gross misrepresentations made to this Court by CAPITAL TAX CORPORATION, as certified by its counsel, and as represented by GILBERT BALIN in his testimony in open court on June 30, 1998, all of which yielded the December 17, 1998 Order and subsequent issuance of a tax deed by the County Clerk, none of the aforedescribed financial harm would have befallen Movant;

NOW, THEREFORE, based upon the foregoing facts, your Movant, JAMES GARNER, now respectfully asks this Court to enter an award of sanctions pursuant to Supreme Court Rule 137 against CAPITAL TAX CORPORATION, Attorney TIMOTHY BALIN, and, if it be learned that CAPITAL TAX CORPORATION is in reality nothing but a shield against liability for GILBERT BALIN as a substantial shareholder, then also directly against GILBERT BALIN, requiring restitution to Movant of all of his out of pocket expenses, including a reasonable attorneys' fee and costs, as well as further incidental expenses relating to the unlawful break-in to the subject premises by way of lock replacement, etc.; and any other and further relief as this Court deems just and fair under the circumstances.

13

**EXHIBIT # 3**

## AFFIDAVIT

The undersigned, being first duly sworn, deposes and says:

1. MB Bank's Mr. Angel Beltran, on 9-7-04, stated the following to me:

   A.) "Plaster in bags was thrown from Mr. Garner's house(5114 s. Damen) into my bank air conditioning area....stopping my unit from working."

   B.) "Worker's filled the bank's dumpster with bricks from Mr. Garner's house."

2. Mr. Beltran gave me his business card.

3. Mr. Beltran received my business card.

4. Mr. Beltran caused the city government(police, streets &sans,etc) to come to Mr. Garner's house and threaten to stop the building repair-men from working.

This affidavit was executed by me on _Sep 10_____, 2004.

STATE OF __I L__ )

COUNTY OF __COOK__ )

I certify that _Philip A Cocomise_____, who is personally known to me to be the person whose name is subscribed to the foregoing instrument produced ___CDL___ as ID, personally appeared before me on ___Sept 10,2004___ and acknowledged the execution of the foregoing instrument.

OFFICIAL SEAL
NANCY L VALENCIA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/27/07



EXHIBIT
**5**

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF: )
)
JAMES GARNER ) IDHR CHARGE NO: 2005CP1282
)
AND )
)
MB FINANCIAL BANK )

NOW COMES the Respondent, MB Financial Bank, and responds to the Charge of Discrimination filed against it by the Complainant, James Garner, as follows:

I.    A.  MB Financial Bank denies that Mr. Garner was denied enjoyment of services on or about
          September 9, 2004 because of his race, Black.

      B.  PRIMA FACIE ALLEGATIONS
          1.  MB Financial Bank affirms that Mr. Garner's race is, Black.

          2.  MB Financial Bank affirms that it is a public accommodation as defined under
              Article 5-101 (A) (2) of the Human Rights Act.

          3.  MB Financial Bank denies that Mr. Garner was qualified for the services at MB
              Financial Bank he sought to receive on or about September 9, 2004.

          4.  MB Financial Bank denies that on or about September 9, 2004 Angel Beltran sent a
              Security guard to evict Mr. Garner from the parking lot.

          5.  MB Financial Bank denies granting Bank services to non-black patrons who were
              similarly situated as Mr. Garner.

WHEREFORE, MB Financial Bank requests that the Charge be dismissed in its entirety.

Respectfully Submitted,

Mario J. Gaal
Human Resources Manager

STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

Mario J. Gaal being first duly sworn, deposes and says that she is the Human Resources Manager of MB Financial Bank; that she has read the foregoing verified response to the charge of discrimination; that she knows the contents thereof; and that knowledge, information, and belief.

Mario J. Gaal

SUBSCRIBED and SWORN to before me

this 23rd day of December 2004

Notary Public

OFFICIAL SEAL
BRENDA CARTER-STAMPS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-8-2008

*✱ Mailed to James Garner 2/1/05*


mb financial
bank

February 1, 2005

James Garner
P.O. Box 368371
Chicago, IL 60636

Dear Mr. Garner,

Per the instruction of the IDHR, enclosed you will find a copy of our verified response.

Regards,

Mario J. Gaal
Human Resources Manager
MB Financial Bank



mb
financial
bank

James Garner
P.O. Box 368371
Chicago, IL 60636

FIRST CLASS
PRESORT

# NEWS

# Man claims MB Financial Bank is trying to take his home

By J. Coyden Palmer

For 15 years James Garner and his family have lived in relative peace in a frame house in the 5100 block of South Damen Ave. But over the past two years, Garner's tranquility has been disturbed by city building inspectors and a local bank adjacent to the Garner home. According to Garner, the bank is interested in acquiring his property so they can build a drive thru facility for their customers. When Garner refused to sell his property that's when the trouble began.

The house is in dire need of repairs Garner admitted as the Crusader toured the building with him in the late summer. There are problems with the plumbing, some exposed wiring and some plaster that needs to be fixed, but nothing that would warrant the shuttering of his home, Garner claims. He also believes that most of the work on the house could have been near completion but that the legal process is stopping him from getting the loan he needs to do the work. And he claims a bank manager played a role in slowing down the repair process.

"Angel Beltran, once he found out I was trying to fix the property, became angry and tried to stop construction," Garner said. "He approached the lender to try to get

him to squeeze me out and stop the construction."

An affidavit was provided to this newspaper by Philip Cocomise in which he stated that Beltran had attempted to defame Mr. Garner and furthermore called city services in an attempt to stop a construction project that was taking place at the Garner home. The affidavit was made in September of 2004.

Attempts were made to contact Beltran for a response to the allegations by Gardner, but our messages were not returned by Crusader press time.

In July of 2004, Garner was hauled into housing court for violations on his property. He says many of the violations were considered minor and that he has been working hard to fix the violations. Cook County court records show that Judge William G. Pileggi has given several continuances in the case an indicated that he is pleased with progress Garner is making. Progress Garner says could be expedited if he were able to get his loan put in place.

"I had a loan approved for $172,000 from Embassy One Mortgage," he said. "But after I pay off the private investor $100,000 what's left over I'm going to finish the improvements on the inside. But the loan is being held up because of this housing court mess. They won't give me

the money as long as the city has the house in court."

Garner has made several improvements on the outside of the building, that inspectors said needed to be made immediately, like tuck pointing and fixing a bad porch. He contends though that the building was like that when he bought it in 1989 and that the city didn't seem to care until the bank showed an interest in getting the property.

Because he believes he has been wronged, Garner has filed complaints with the Department of Housing and Urban Development, in addition to the Illinois Department of Human Rights.

This wasn't the first time the bank was looking to expand its property. Neighbors directly to the west of the bank told this newspaper they too had been approached about selling their property. They told the bank no. Two months ago a group of people protested outside the bank because of their alleged actions in the Garner case.

In the meantime, Garner and his family are living with friends hoping that one day soon they will be able to return to their home. He is also in negotiations with the city to receive a subordination agreement so he can secure the loan to fix the property.

The **Crusader** will continue to follow this story as it develops.



THIS HOUSE, which is the target of a local bank that wants the property, Garner, is the owner by African American James. Officials at the bank, MB Financial are being tight-lipped about their future expansion plans. (Photo by J. Coyden Palmer)

The Chicago Crusader

Saturday, October 22, 2005

# EXHIBIT 6



CHICAGO POLICE DEPARTMENT

# ORIGINAL CASE INCIDENT REPORT

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(5/03)-C

RD #: HM346904

Case ID: 4754650   caar201

EVENT #:   0613214319

---

**APPROVAL COMPLETE**

IUCR: 5000 - Other Offense - Other Crime Against Person

| | | |
|---|---|---|
| Occurrence Location: | 5114 S Damen Ave<br>Chicago IL<br>290 - Residence | Beat: 0915 |
| Occurrence Date: | 01 March 2004 00:01 - 12 May 2006 16:00 | |

Unit Assigned: 9168
RO Arrival Date: 12 May 2006 17:39

---

**VICTIM**

| | | |
|---|---|---|
| Name: | GARNER, James | |
| Res: | 5114 S Damen Ave<br>Chicago IL | Beat: 0915 |
| CPD Officer: No | | |

**Demographics**
Male
Black    Age: 55 Years

**PERSON REPORTING OFFENSE**

| | | |
|---|---|---|
| Name: | GARNER, James | |
| Res: | 5114 S Damen Ave<br>Chicago IL | Beat: 0915 |
| CPD Officer: No | | |

**Demographics**
Male
Black    Age: 55 Years

---

**SUSPECT**

| Name: | MB FINANCIAL BANK, Mb<br>Financial Bank |
|---|---|

---

EVENT#14319 VICTIM STATES THAT HE FEELS THAT MB FINANCIAL BANK IS MAKING NUMEROUS FALSE REPORTS AGAINST HIM BECAUSE HE REFUSES TO SELL HIS PROPERTY TO THEM. HE STATES THAT IN MARCH 2004 AFTER REFUSING TO SEEL HIS PROPERTY TO THE BANK, THE BANK MANAGER PICKED UP TRASH AND THREW IT IN VICTIMS BACK YARD. IN SEPT. 2004 THE VICTIM GOT A LOAN ON HIS PROPERTY FOR IMPROVEMENTS AND HIS LENDER WAS STANDING IN FRONT LOOKING AT THE WORK THAT WAS BEING DONE ON THE PROPERTY WHEN HE WAS APPROACHED BY MR BELTRAN THE BANK MANAGER OF MB FINANCIAL, MR BELTRAN ASKED COCMISE THE VICTIMS LENDER WHAT HE WAS DOING WITH THE PROPERTY. MR BELTRAN STATED HE WAS GOING TO CALL THE POLICE AND HAVE THEM COME AND STOP THE WORK FROM BEING DOINE BECAUSE THE REHABBERS WERE MAKING A MESS. VICTIM STATES THE POLICE SHOWED UPANS MR COCMISE TOLKD THENM THAT THE REHABBERS WERE IN FACT CLEANING UPO THEIR MESS AND THE POLICE LEFT. VICTI STATES THAT MB FINANCIAL PUT A FREEZE ON VICTIMS ACCOUNT WHICH HAS A BALANCE OF 200.00 IN IT WITHOUT WRITTEN NOTICE. IN SEPT 2005 VICTIM STATED HE WAS OUTSIDE WORKING ON HIS RESIDENCE AND OBSERVED THE POLICE TALKING TO THE BANK SECURITY GUARD. VICTIM LATER HEARD ROCKS BEING THROWN AT HIS WINDOW AND WHEN HE WENT TO THE WINDOW WITH A CAMERA A POLICE OFFICER PULLED OUT A GUN. A FEMALE SUPERVISOR SHOED UP ON THE SCENE AND TOLD THE OFFICER TO PUT HER GUN AWAY. THE SUPERVISOR EXPLAINED TO THE VICTIM THAT THE BANK GUARD CLAIMED HE WAS GIVING HER DESCRIPTION ON A CELL PHONE. VICTIM STATES HE DID NOT KNOW WHAT THE GUARD WAS TALKING ABOUT AT WHICH TIME THE POLICE LEFT.IN APRIL 2006 THE VICTIM WAS SITTING WITH HIS 2 CHILDREN AND WIFE IN A WHITE VAN AT HAROLDS CHICKEN WHEN HE WAS APPROACHED BY THE POLICE WHO ASKED THE VICTIM TO SHW HIS ID, VICTIM STATED THAT HE LIVED ACROSS THE STREET ANDS SHOWED THE OFFICERS HIS WORK PERMITS. THE OFFICER STATED THAT THE BANK GUARD CALLED AND STATED THAT THE VICTIM WAS CASING THE BANK ANS TAKING PICTURES. IN MAY 2006 THE BANK GUARD AGAIN CALLED THE POLICE AND AGAIN STATED THAT HE WAS CASING AND TAKING PICTURES OF THE BANK. THE VICTIM FEELS THAT THE BANK IS MAKING THESE FALSE REPORTS BECAUSE HE WONT SELL HIS PROPERTY.VICTIM STATED THAT HE HAS WRITTEN TO THE SECURITY AGENCY ABOUT THE GUARD. THE BANK PUT A FREEZE ON HIS ACCOUNT WITH NO EXPLANATION AND VICTIM CAN NOT GET HIS MONEY OUT OF HS ACCOUNT. WHICH HE IS HANDLING WITH A CIVIL ATTORNER. VICTIM STATES THAT HE IS

---

Chicago Police Department - Incident Report

RD #: HM346904

TIRED OF THIS AS HE WAS CONTACTED HIS ATTORNEY WHO ADVISED HIM TO CALL THE POLICE AND HAVE A REPORT MADE.
VIN SENT

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Reporting Officer | 16868 | #40014 | RAKE, Ellen, F | (PC0R307) | 22 May 2006 15:30 | 376 | 9168 |

EXHIBIT

**# 8**

LAW OFFICES

## NISEN & ELLIOTT, LLC

SUITE 2500

200 WEST ADAMS STREET

CHICAGO, ILLINOIS 60606

JOHN K. KNEAFSEY

TELEPHONE
(312) 346-7800

FAX
(312) 346-9316

EMAIL
JKNEAFSEY@NISEN.COM

December 11, 2006

**Via Facsimile (773.737.1131) & U.S. Mail**

Mr. James Garner
P.O. Box 368371
Chicago, IL 60636

Dear Mr. Garner:

Enclosed please find the letters sent to the Chicago Police Department, MB Financial, and Securitas in regard to your property at 5114 S. Damen Ave.

I am in receipt of your fax dated December 11, 2006. As to paragraph 1, I told you if there were any additional harassment from the bank I would look at the facts and might take the case on a contingent basis depending on the facts. I will order the transcripts today and send you a copy of the letter. Should you have any questions, please do not hesitate to call.

Very truly yours,

John K. Kneafsey

JKK/cm

cc: James Garner

Ex. # 8

LAW OFFICES

# NISEN & ELLIOTT, LLC

SUITE 2600

200 WEST ADAMS STREET

CHICAGO, ILLINOIS 60606

JOHN K. KNEAFSEY

TELEPHONE
(312) 346-7800

FAX
(312) 346-9316

EMAIL
JKNEAFSEY@NISEN.COM

December 11, 2006

## Via Facsimile (847.653.2297) & U.S. Mail

Marlo J. Gaal
Human Resources Manager
MB Financial Bank
6111 North River Road
Rosemont, IL 60018

### Re: James Garner, 5114 S. Damen Ave.

Dear Ms. Gaal:

Nisen & Elliott, LLC has been retained by James Garner, 5114 S. Damen Ave., concerning certain actions taken with MB Financial Bank and Mr. Angel Beltran since Mr. Garner refused MB Financial's offer to purchase his property. Mr. Garner alleges the actions of the bank have interfered with his ability to finish work on the building.

If there are any actions taken by MB Financial Bank that interfere with Mr. Garner's ability to repair his property, said actions will be followed by legal action.

Very truly yours,

John K. Kneafsey
John K. Kneafsey

JKK/cm

cc: James Garner

EXHIBIT

9

P.O. Box 368371
Chicago, Ill. 60636

July 26, 2007

Office of Professional Standards
CITY OF CHICAGO
10 W. 35th Street -#1200
Chicago, Illinois 60616

Re:  Correspondence(VIA US Mail)  From Citizen-
     **Formal Complaint Against Following Cops Named Herein Below**

Gentlemen:

Last Friday(July 20, 2007), around 8:40a.m., the bank's guard called the police, *had another false police report*(RD#477-476) *made*, and **several cops**(Mr. Pernal, Mr. **Dorsch, and Sergeant Young) refused**(around 5:15pm) **to make a police report**.

Again, on July 24, 2007, I contacted the Chicago Police.  After I advised the police of all the previous incidents of bank harassment(via police report[HM346904]{COPY ENCLOSED]), **Sergeant Panagas** suggested that I get an appraisal, contact the bank, offer to sell my property, and this would solve the problem.

Mr. Panagas, also indicated that I could be arrested, if I arrived at the building and was working on the exterior.  The bank guard could call the police, sign a complaint, and have me arrested.  **However, Mr. Panagas indicated that he would make no police report for me, concerning the bank's crime of making a false police report.**

Mr. Panagas also indicated that a female bank guard, called police and made the following, false allegations:
1.     "*.....disturbance with somebody spraying water, taking pictures of a her, and threatening her...*";   "*.....she had the same problem last year with the offender and did a report back then.....*";

**I can't afford to be arrested in front of my kids, if I come to the property and I have to work outside the building.**  How can I get a police report made for the 7-20-07-incident described herein above?  How can I get police protection from these continuous crimes(series of false reports) by bank personnel?  Can you get and preserve a transcript of my calls to the cops?  How does the OPS-complaint process work?

Sincerely,

James Garner

Page  1  of  1

EXHIBIT

10




**CHICAGO POLICE DEPARTMENT**

Detective
James L. Dowling

Area One Detective Division
5105 S. Wentworth. Chicago. IL 60609
Tel: (312) 747-8384



**CHICAGO POLICE DEPARTMENT**

Detective
James L. Dowling

Area One Detective Division
5105 S. Wentworth. Chicago. IL 60609
Tel: (312) 747-8384

AK04NK
OCT. 17, 2008 (Ui?Jobm)

MR. DOWLING° GAVE
BUSINESS CARD, THREATENED
ARREST, INDICATED THAT
HE WOULD CONTACT M.B.
BANK TO DISCUSS ~~HAVING~~
THEM TO BUY SILY.S.
DAMEN, INVITED US
TO CONTINUE PROTEST, ETC.

(773) 410-4037
JIM



**CHICAGO POLICE DEPARTMENT**

Detective
James L. Dowling

Area One Detective Division
5105 S. Wentworth. Chicago. IL 60609
Tel: (312) 747-8384


EXHIBIT
71

# Housing Discrimination Complaint

**U.S. Department of Housing
and Urban Development
Office of Fair Housing
and Equal Opportunity**

OMB Approval No. 2529-0011

Please type or print this form

Public Reporting Burden for this collection of information is estimated to average 1 hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

Read this entire form and all the instructions carefully before completing. All questions should be answered. However, if you do not know the answer or if a question is not applicable, leave the question unanswered and fill out as much of the form as you can. Your complaint should be signed and dated. Where more than one individual or organization is filing the same complaint, and all information is the same, each additional individual or organization should complete boxes 1 and 7 of a separate complaint form and attach it to the original form. Complaints may be presented in person or mailed to the HUD State Office covering the State where the complaint arose (see list on back of form), or any local HUD Office, or to the Office of Fair Housing and Equal Opportunity, U.S. Department of HUD, Washington, D.C. 20410.

This section is for HUD use only.

| Number | (Check the applicable box) | Jurisdiction | Signature of HUD personnel who established Jurisdiction |
|---|---|---|---|
| Filing Date | ☐ Referral & Agency (specify) ☐ Systemic ☐ Military Referral | ☐ Yes ☐ No ☐ Additional Info | |

**1. Name of Aggrieved Person or Organization** (last name, first name, middle initial) (Mr.,Mrs.,Miss,Ms.)

Garner, James    Mr.

Street Address (city, county, State & zip code)

P.O. Box 368371    ;   Chicago, Illinois 60636

Home Phone: 773-222-2274     Business Phone: 312-525-1452

**2. Against Whom is this complaint being filed?** (last name, first name, middle initial)

MB FINANCIAL BANK &   Mr. Mitch Feiger

Phone Number: 1-866-448-4322

Street Address (city, county, State & zip code)

6111 North River Road;    Rosemont, Illinois 60018

Check the applicable box or boxes which describe(s) the party named above:

☐ Builder  ☐ Owner  ☐ Broker  ☐ Salesperson  ☐ Supt. or Manager  ☒ Bank or Other Lender  ☐ Other

If you named an individual above who appeared to be acting for a company in this case, check this box ☐ and write the name and address of the company in this space:

Name: N/A     Address

Name and identify others (if any) you believe violated the law in this case:

Mr. James L. Dowling

**3. What did the person you are complaining against do?** Check all that apply and give the most recent date these act(s) occurred in block No. 6a below.

☒ Refuse to rent, sell, or deal with you  ☐ Falsely deny housing was available  ☐ Engage in blockbusting  ☐ Discriminate in broker's services

☒ Discriminate in the conditions or terms of sale, rental occupancy, or in services or facilities ☐ Advertise in a discriminatory way  ☐ Discriminate in financing  ☒ Intimidated, interfered, or coerced you to keep you from the full benefit of the Federal Fair Housing Law

☒ Other (explain) BECAUSE OF OUR RACE, MY FAMILY AND I SUBJECTED TO METHODICAL CONSTANT HARASSMENT PLUS INTIMIDATION PLUS THREATS... ORCHESTRATED BY THE BANK TO USURP MY PROPERTY. FORCE ME TO LOSE PROPERTY, OR COERCE ME TO SELL MY PROPERTY TO THE BANK;

**4. Do you believe that you were discriminated against because of your race, color, religion, sex, handicap, the presence of children under 18, or a pregnant female in the family or your national origin?** Check all that apply.

☒ Race or Color
 ☐ Black
 ☐ White
 ☒ Other (African-American)

☐ Religion (specify)

☐ Sex
 ☐ Male
 ☐ Female

☒ Handicap
 ☐ Physical
 ☒ Mental
 Children Disabled

☐ Familial Status
 ☐ Presence of children under 18 in the family
 ☐ Pregnant female

☐ National Origin
 ☐ Hispanic  ☐ American  ☐ Other (specify)
 ☐ Asian or Pacific Islander  ☐ Indian or Alaskan Native

**5. What kind of house or property was involved?**

☐ Single-family house
☒ A house or building for 2, 3, or 4 families
☐ A building for 5 families or more
☐ Other, including vacant land held for residential use (explain)

**Did the owner live there?**
☒ Yes
☐ No
☐ Unknown

**Is the house or property**
☐ Being sold?
☐ Being rented?
N/A

**What is the address of the house or property?**
(street, city, county, State & zip code)

5114 S. Damen Ave.
Chicago, Ill. 60609

**6. Summarize in your own words what happened.** Use this space for a brief and concise statement of the facts. Additional details may be submitted on an attachment.

Note: HUD will furnish a copy of the complaint to the person or organization against whom the complaint is made.

10-17-08: BANK ORCHESTRATED VISIT BY MR. DOWLING, WHO INDICATED BANK WAS TIRED OF US, HE COULD NEGOTIATE SALE OF MY PROPERTY TO BANK, BANK FILED A STACK OF POLICE REPORTS AGAINST US, HE COULD ARREST US, HAVE OUR KIDS SEIZED, INVITED US TO FILE COMPLAINT OR SUE HIM, ETC.  11-13-08: BANK-WORKER DUMPS TRASH ON MY PROPERTY.

**6a.** When did the act(s) checked in Item 3 occur? (Include the most recent date if several dates are involved)

(Oct. 17, 2008)

7. I declare under penalty of perjury that I have read this complaint

EXHIBIT
16

THE CLERK: James Gardner, Motion-Defendant;
with an attorney.

THE COURT: All right. He is here.

Do you have an attorney on the way?

THE DEFENDANT: Good morning, your Honor.

THE COURT: Do you have an attorney on the way?

THE DEFENDANT: I would like to make another motion
for a jury trial.

THE COURT: I know. This is the other case.

THE DEFENDANT: All right.

THE COURT: No. You cannot make any motion.

I am not going to allow you to represent yourself.

THE DEFENDANT: For the record, I cannot afford an
Attorney, because my only source of income is
Social Security, and my house is in foreclosure; because
MP Bank is trying to take my property.

THE COURT:
5/24/11 at 9:00 a.m.

You will be coming back with a lawyer.

I will see you tomorrow at 9:00 o'clock a.m.

THE DEFENDANT: Thank you, your Honor.

(Whereupon, a continuance was
was taken to 5/24/11.)

2

Ex. #16

STATE OF ILLINOIS )
                  ) SS:
COUNTY OF C O O K )

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT - MUNICIPAL DIVISION

THE PEOPLE OF THE )
STATE OF ILLINOIS ) Case# 11-MC1-215169-01
                  )
        Plaintiff, ) Branch# 34
                  )
    Vs.           )
                  )
JAMES GARDNER,    )
                  )
        Defendant.     )

Report of Proceedings of the hearing had

before the HONORABLE GLORIA CHEVERE on the 23rd day of

May, 2011 in Chicago, Illinois.

APPEARANCES:
    HONORABLE ANITA ALVAREZ,
      State's Attorney of Cook County, by
    MS. MAIESHA BAPTISTE,
      Assistant State's Attorney,
      Appeared on behalf of the Petitioner;

    No one appeared for the Defendant.

O
F
F
I
C
I
A
L

C
O
U
R
T

R
E
P
O
R
T
E
R

CIRCUIT COURT
OF
COOK COUNTY

69 W. Washington
Suite 900
Chicago, IL 60602
312-603-8400

KHALIDAH M. KALI, CSR
Official Court Reporter
License Number 084-1698
16501 Kedzie
Markham, Illinois

1

EXHIBIT # 19

1    THE CLERK: James Garner.

2    THE COURT:  Do you have a lawyer on the way?

3    THE DEFENDANT:  For the record, I am due at a hearing

4    tomorrow.  I am due in the Daley Center on Thursday, May 26,

5    2011.  I am in federal court on Friday.

6    THE COURT:  Do you have a lawyer on the way?

7    THE DEFENDANT:  No, I don't.

8    THE COURT:  Motion, Defendant, hold on call, 5-25-11 at

9    9:00 a.m..  See you tomorrow at 9:00 o'clock in the morning.

10    THE DEFENDANT:  Thank you.

11                              (Case continued to 5-25-11.)

12

13

14

15

16

17

18

19

20

21

22

23

24

# EXHIBIT
20

1    THE CLERK:  James Garner.

2    THE DEFENDANT:  Here.

3    THE COURT:  Do you have an attorney on record?

4    MR. DAVIS:  Good morning.  This is my 6th hearing on the

5   case in less than 16 days.  And per my 6th Amendment of the

6   United States constitution, I hereby request a jury trial.

7    THE COURT:  Like I told you before, you will not be

8   allowed to make those motions on your own.  You're to come here

9   with an attorney.  And I told you that I would have this case on

10   the call for 21 straight court days until such time as you come

11   in with an attorney.  So this will go, hold on call -- motion

12   Defendant, hold on call, to Tuesday, 5-31-11 at 9:00 a.m.

13           See you then, Mr. Garner.

14    THE DEFENDANT:  Thank you your Honor.  Have a nice

15   weekend.

16               (Case continued to 5-31-11.)

17

18

19

20

21

22

23

24

2





# EXHIBIT 24

FILED

JAN 1 4 2005

DOROTHY BROWN
CLERK OF CIRCUIT COURT

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT - FIRST DISTRICT

City of Chicago, a municipal corporation, )
                     Plaintiff. )
                                 )
                                 )
               Vs.            )     04 M1 402538
                                 )RE:   5114 S. Damen Ave.
James Garner, Capital Tax Corp.,      )     Chgo, IL
       Global Land Enterprises,         )
Inc., Unknown Owners, and Non-Record )
Claimants',    Defendants.           )

JAN 1 4 2005

DOROTHY BROWN
CLERK OF CIRCUIT COURT

Motion to Dismiss Plaintiff's Complaint for Equitable Relief

NOW COMES James Garner, herein after referred to as Garner, who states in support of the above captioned pleading as follows:

1.      On May 28th, 2004, Garner owned the premises at both 5114 S. Damen in the city of Chicago, Cook Co. , IL.

2.            On May 28th, 2004, an employee of the Plaintiff, Jason Roberts, without authority came on to the property of Garner and ordered a city worker to tow away seventeen motor vehicles owned by Garner, and which had been stored on Garner's property at 5114 S. Damen Ave. , leaving Garner deficit of any assets with which to afford the proper defense of this properties;

3.      On July 12th, 2004, the same individual, Jason Roberts, again led a raid upon Garner's property, improperly & illegally obtaining evidence which was to be later used against Garner in a suit which would be lodged against him on July 19th , 2004 to deprive him of his home;

4.      In August of 2004, the above numbered law suit for equitable relief was filed against Garner;

5.      On that date this court entered an order against Garner requiring him to vacate the home where he had lived undisturbed for sixteen years before the raid;

6.      The above actions stripped Garner of substantial assets with which he could have properly defended himself in the housing case brought against him relative to his home located at 5114 S. Damen, Chicago, IL;

7.      Such actions were part of a conspiracy by the M. B. Financial Bank to usurp Garner's property for use by the bank, itself.

8.      Wherefore, Garner asks this court to DISMISS this complaint instanter and to rescind all orders relating to the Plaintiff's home at 5114 S. Damen, Chicago.